The Honorable Barbara J. Rothstein

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
## AT TACOMA

WILLIAM T. WHITMAN, individually and on behalf of all others similarly situated,

        Plaintiff,

vs.

STATE FARM LIFE INSURANCE COMPANY,

        Defendant.

NO. 3:19-cv-06025-BJR

**PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**

**ORAL ARGUMENT REQUESTED**

Plaintiff William T. Whitman ("Mr. Whitman" or "Plaintiff") individually, and on behalf of the proposed Class of Washington policy owners, challenges Defendant State Farm Life Insurance Company's ("State Farm" or "Defendant") interpretation and implementation of its form universal life insurance policy—"Form 94030." This case is well-suited for class certification because it turns on the interpretation of a form contract under Washington law, and State Farm's uniform conduct toward all class members. In fact, two nearly identical cases brought against State Farm on behalf of classes of Missouri and California policy owners of the same policy form have been certified in the last few years. The case involving Missouri Form 94030 owners was tried to jury verdict in 2018, *see Vogt v. State Farm Life Ins. Co.*, 16-4170-CV-C-NKL (W.D. Mo.) ("*Vogt*"), and affirmed on

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

appeal, *see* 963 F.3d 753 (8th Cir. 2020). The case involving California Form 94030 owners is set for a class trial in May 2021, *see Bally v. State Farm Life Ins. Co.*, 18-cv-04954-CRB (N.D. Cal.) ("*Bally*"). The same result is warranted here.[1]

State Farm's Form 94030 life insurance policy (the "Policy") is a "universal" life insurance contract. Unlike standard "term" life insurance, universal life insurance is designed to provide a lifetime death benefit to the insured plus an investment feature or savings component, called the "Account Value," that allows policy owners to earn interest on their accumulated premiums over time. The Policy provides for certain charges to be deducted, including a premium expense charge, taken by State Farm from each premium before the remainder of the premium is deposited into the policy owner's Account Value, as well as a "Monthly Deduction" taken from the Account Value each month.

The Policy provides that the Monthly Deduction includes a cost of insurance charge (the "COI charge") and an expense charge (the "Expense charge"). As alleged in Plaintiff's Second Amended Complaint ("Complaint" or "Compl."), State Farm determines these charges in a manner not permitted by the plain terms of the Policy. Specifically, the Policy requires that State Farm calculate the COI charge component of the Monthly Deduction using cost of insurance rates ("COI rates"). State Farm promises its COI rates "for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class," and "can be adjusted for projected changes in mortality." Policy year, age, sex, and rate class are factors associated with assessing an insured's mortality risk (i.e., the risk the insured will die). But State Farm does not base its COI rates on those mortality factors identified in the Policy. Instead, State Farm loads its COI rates and corresponding

---

[1] For this reason, Plaintiff's motion affirmatively addresses the arguments that State Farm raised and that were rejected in *Vogt* and *Bally* (and that Plaintiff expects State Farm will raise here) with the goal of providing the Court context to these previously litigated and resolved issues.

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 2

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

COI charges with unlisted, non-mortality factors, including expenses and profit, in repeated breach of the Policy. This case presents a predominating, common question of liability, the answer to which will resolve thousands of claims: whether State Farm breached the Policy by taking funds from policy owners without authorization under the Policy's relevant terms.

Like liability, damages can be readily determined on a class-wide basis by calculating the lost Account Value (with interest at the applicable policy rate) for each policy owner resulting from the COI overcharges. The excess deductions are calculated using the same formula for every class member—simply by subtracting the non-mortality component attributable to State Farm's use of impermissible factors in determining COI rates. By way of example, by loading its COI rates with unlisted factors at pricing and repricing, State Farm deprived Mr. Whitman of $5,566.82 in Account Value due to the excessive deductions. These amounts can be similarly and systematically calculated for each class member and aggregated for the entire Class, as Plaintiff's expert, Scott Witt, did for the Missouri and California classes in *Vogt* and *Bally*, and which he has so calculated for the putative Washington class.

## **STATEMENT OF FACTS**

**I.      The Life Insurance Contracts Between State Farm and the Class.**

State Farm began issuing Form 94030 universal life insurance policies in Washington in January 1994. Declaration of Scott J. Witt ("Witt Dec."), ¶ 19, Ex. I (Holzbauer Dep.), 142:10-20. Mr. Whitman purchased his Form 94030 Policy in Tacoma, Washington in 2001. *See* application attached to the Policy.[2] Although existing policies remain in force, State Farm ceased issuing new Form 94030 policies in Washington in 2004. Witt Dec., ¶ 19.

The Policy is a valid and enforceable contract between each policy owner and State Farm.

---

[2] Plaintiff's Policy is attached as Ex. B to the Declaration of Mr. Witt.

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Dkt. 38 (Compl.), ¶ 13. Its terms are not subject to individual negotiation and are materially the same for all policy owners, and the Policy cannot be altered by the agent's representations at the time of sale, or by any other discussions or writings. Policy at 11 ("The [P]olicy is the entire contract," and it consists of "the Basic Plan, any amendments, endorsements, and riders, and a copy of the application."). State Farm's obligations (like the policy owner's) cannot be obviated by informal consent, waiver, or some other act because "[o]nly an officer has the right to change this [P]olicy. No agent has the authority to change the [P]olicy or to waive any of its terms." *Id.*

The Policy is a "universal" life insurance policy. In contrast to term life insurance, which provides only a death benefit, the Policy includes an Account Value where, after deduction of a premium expense charge, premiums are deposited and accumulate interest at a fixed rate of no less than four percent (4%), much like a savings account. *Id.*; *see* Witt Dec., ¶ 17.

## II.  The Policy Identifies Specific Charges State Farm Is Authorized to Deduct from Account Values.

The Policy authorizes State Farm to take from the Policy's Account Value a Monthly Deduction comprised of the separately identified: (a) COI charge; (b) charges for any riders; and (c) $5.00 Expense charge. Policy at 9.

### A.  The COI charge is a mortality charge.

The Policy provides that the COI charge is determined by multiplying the COI rate by the Policy's net amount at risk (the amount by which the death benefit amount exceeds the Account Value; in other words, the net amount State Farm will have to pay the beneficiary if the insured dies). Witt Dec., ¶ 26; Policy at 10. The Policy then states that COI rates "*for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class,*" and that "*[s]uch rates can be adjusted for projected changes in mortality.*" *Id.* (emphasis added). The factors identified in the Policy are characteristics commonly understood and used within the life insurance

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

industry to determine the mortality expectations for an insured. Witt Dec., ¶ 30; *id.*, Ex. F (Phipps Tr.), 24:24-25:9; *id.*, Ex. E (Streily Tr.), 155:19-158:22, 159:6-160:20, 196:6-197:23; *see also Vogt*, 2018 WL 1747336, at *2 (W.D. Mo. Apr. 10, 2018) (recognizing that age, sex, and rating class are mortality factors); *Alleman v. State Farm Life Ins. Co.*, 334 F. App'x 470, 472 (3d Cir. 2009) (noting that age and sex are mortality factors); *In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1061 (N.D. Cal. 2013), *vacated pursuant to settlement*, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013) ("Because age and sex are the guiding factors in the lifespan of a person, a layperson would ordinarily attach the rates to mortality."). State Farm does not disclose to policyholders the actual COI rates or factors included therein. Witt Dec., Ex. I (Holzbauer Tr.), 178:21-25; *id.*, Ex. E (Streily Tr.), 124:13-23; *id.*, Ex. C (annual statements); *id.*, Ex. D (Policy illustration); *see also Bally*, 335 F.R.D. 288, 304 (N.D. Cal. 2020) (granting certification of a California class, stating "State Farm does not adduce any evidence to show that 'policyholder[s] would have been on notice that State Farm was considering unlisted variables in calculation [of] the COI'") (citing *Vogt*, 2018 WL 1955425, at *6 \ ("[T]here is nothing to indicate that individual statute-of-limitations issues would predominate so as to make class certification impractical or inappropriate.")).

The Policy separately authorizes State Farm to deduct a 5% premium expense charge from each premium paid as well as a fixed monthly Expense charge of $5.00. Policy at 3.

**B.      State Farm increases COI charges with undisclosed loads.**

Mr. Whitman contends the Policy provision requiring that monthly COI rates "for each policy year" be "based on the Insured's age on the Policy anniversary, sex, and applicable rate class" means exactly what it says: that State Farm must determine COI rates using only the listed factors, not undisclosed factors to increase the COI rates. The *Vogt* court agreed with Plaintiff's

interpretation of the Policy, and that interpretation was affirmed on appeal by the Eighth Circuit. *See Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 763-64 (8th Cir. 2020). Similarly, the *Bally* court concluded the Policy was ambiguous and thus construed the ambiguity in favor of the insured. *See* 2019 WL 3891149, at \*8.

State Farm can and did develop rates using only the listed factors when it priced the Policy; they are known as the "pricing mortality" rates. *See* Witt Dec., ¶¶ 30, 32; *id.*, Ex. E (Streily Tr.), 151:23-152:15, 160:15-20; *id.*, Ex. I (Holzbauer Tr.), 145:15-19. But, after developing these pricing mortality rates using only the listed factors, State Farm increased those rates with undisclosed profit and expense loads. *See Vogt*, Dkt. 335; Witt Dec., Ex. G (New Jersey Actuarial Memorandum) at 5; *id.*, Ex. E (Streily Tr.), 144:20-24; 224:6-18 (admitting that "pricing mortality . . . was used to determine a cost of insurance rate, and that the cost of insurance rate was then loaded for expenses and profit," and that "expenses and profit" are not considered "to be mortality related"); *see also* Witt Dec., ¶¶ 41-45. Inclusion of these undisclosed factors has a substantial impact on the amounts deducted each month from policy owners' Account Values. On the same policy form and identical pricing process (*see* Witt Dec., ¶ 33), a jury found State Farm's overcharges caused over \$34 million in lost Account Value for a class of approximately 24,000 Missouri policy owners, *see Vogt*, Dkt. 358, and in *Bally*, Mr. Witt has calculated total lost Account Value in excess of \$120 million for the class of over 82,000 California policy owners.

In this case, the loading of the COI rates was similarly substantial. For instance, in the first ten years after Mr. Whitman purchased his Policy, State Farm charged him COI rates nearly double the rates determined using only the listed, contractual mortality factors. In other words, COI charges calculated using the contractual COI rates would have been approximately half of the COI charges that State Farm actually deducted, meaning Mr. Whitman's actual charges contained significant

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    undisclosed loads. *See* Witt Dec., ¶ 48. Over the life of Mr. Whitman's Policy, his COI charges were,

2    on average, in excess of 140% of what they would have been if State Farm had not included

3    undisclosed factors in the COI rates. *See id.*

4    Because these Policy overcharges result from State Farm's uniform administration of the

5    Policy, all policy owners are subject to the same set of loaded COI rates. *See* Witt Dec., ¶ 33; *id.*,

6    Ex. E (Streily Tr.), 140:3-145:10, 146:17-147:5, 171:21-172:11.

7    ## ARGUMENT

8    Plaintiff has brought claims for breach of contract (Count I – Cost of Insurance Charge and

9    Count II – Expense Charge), conversion (Count III), violation of the Washington Consumer

10   Protection Act (Count IV), and declaratory and injunctive relief (Count V) (Dkt. 38). Plaintiff now

11   moves for an order certifying the following class ("the Class"):

12   
13   > All persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Washington whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction.[3]

14   Three courts have already found that class certification is appropriate in nearly identical

15   cases. The Western District of Missouri in *Vogt* certified a class of Missouri policy owners making

16   the same allegations on the Form 94030 policy, and the Eighth Circuit affirmed class certification

17   on appeal. *Vogt*, 2018 WL 1955425, at *6, *aff'd* 963 F.3d 753, 766-68 (8th Cir. 2020). The Northern

18   District of California in *Bally* likewise certified a class of California policy owners making the same

19   allegations on the Form 94030 policy as are asserted here, and State Farm's Rule 23(f) petition for

20   
21   
22   
23   ----
[3] Excluded from the Class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and policies that insured males with an issue age of zero and terminated in the first policy year.

permission to appeal was denied. *Bally*, 335 F.R.D. at 305, *Rule 23(f) appeal denied*, No. 20-80070 (9th Cir. July 22, 2020).

Moreover, courts frequently certify class actions, like this one, alleging breaches of the cost of insurance provisions of standardized life insurance policies. *See, e.g.*, *Spegele v. USAA Life Ins. Co.*, 336 F.R.D. 537 (W.D. Tex. 2020) ("*USAA COI*"); *Feller v. Transamerica Life Ins. Co.*, No. 16-cv-01378, 2017 WL 6496803 (C.D. Cal. Dec. 11, 2017) ("*Transamerica COI*"); *In re Conseco Life Ins. Co. LifeTrend Ins. Sales & Mktg. Litig.*, 270 F.R.D. 521, 533 (N.D. Cal. 2010); *In re Conseco Life Ins. Co. Cost of Ins. Litig.*, No. ML 04-1610, 2005 WL 5678842, at *4, *9 (C.D. Cal. Apr. 26, 2005); *Larson v. John Hancock Life Ins. Co.*, No. RG16813803, 2017 WL 4284163 (Cal. Super. Ct. March 23, 2017) ("*John Hancock COI*"); *Fleisher v. Phoenix Life Ins. Co.*, No. 11-cv-8405, 2013 WL 12224042, at *13, *18 (S.D.N.Y. July 12, 2013) ("*Phoenix COI*"); *Hanks v. Lincoln Life & Annuity Company of New York*, 330 F.R.D. 374 (S.D.N.Y. 2019) ("*Lincoln Life COI*"); *Lee v. Allstate Life Ins. Co.*, 361 Ill. App. 3d 970 (Ill. Ct. App. 2005). Class certification here is likewise proper.

## III.     Standard on Class Certification.

"A party seeking to litigate a claim as a class representative must affirmatively satisfy the requirements of Federal Rule of Civil Procedure 23(a) and the requirements of at least one of the categories under Federal Rule of Civil Procedure 23(b)." *Rosas v. Sarbanand Farms, LLC*, 329 F.R.D. 671, 682 (W.D. Wash. 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)). The Court conducts a "rigorous analysis" in determining whether these requirements are met, but "must not decide the merits of a factual or legal dispute" unless those merits overlap with the Rule 23 requirements. *Id.* "The ultimate decision to certify a class is within the Court's discretion." *Id.*

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

In this case, the proposed Class meets all the requirements of Rule 23(a) as well as the requirements of Rule 23(b)(2) and (b)(3).

## IV.    The Class Meets Each of the Requirements of Rule 23(a).

Rule 23(a) states the following class certification requirements: "(1) the class is so numerous that joinder is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of those of the class; and (4) the representatives will fairly and adequately protect the interests of the absent class members." *Rosas*, 329 F.R.D. at 682 (citing Fed. R. Civ. P. 23(a); *Mazza*, 666 F.3d at 588 ("Rule 23(a) requires that plaintiffs demonstrate numerosity, commonality, typicality and adequacy of representation in order to maintain a class action.")).

### A.    Numerosity is satisfied.

Rule 23(a)'s numerosity requirement is satisfied when the proposed class is sufficiently numerous to make joinder of all members impracticable. Fed. R. Civ. P. 23(a)(1). "A numerosity determination requires an examination of the specific facts of each case, though '[i]n general, courts find the numerosity requirement satisfied when a class includes at least 40 members.'" *Rosas*, 329 F.R.D. at 683 (quoting *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010)).

The proposed Class is sufficiently numerous. State Farm's records show there are over 11,000 members in the proposed Class. Witt Dec., ¶ 20.

### B.    There are common questions of law and fact.

Under Rule 23(a)(2), Plaintiff "must demonstrate that the 'class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Rosas*, 329 F.R.D. at 683 (quoting *Mazza*, 666 F.3d at 588; *Wal-Mart Stores*, 564 U.S. at 345). "Every question of law or fact need not be common

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION - NO. 3:19-CV-06025-BJR - 9

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   to the class." *Id.* (citing *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 957 (9th Cir. 2013)).

2   "Rather, all Rule 23(a)(2) requires is 'a single significant question of law or fact.'" *Id.* (quoting

3   *Abdullah*, 731 F.3d at 957).

4          State Farm made and continues to make excessive deductions for COI charges. Plaintiff

5   asserts that State Farm has determined COI rates in a manner not authorized by the Policy, and the

6   resulting deductions from Account Values exceed the amounts permitted by the Policy's terms.

7   Common evidence of State Farm's uniform methodology of calculating deductions on a common

8   form Policy will establish whether State Farm is liable for breach of contract as a result of its failure

9   to determine COI rates using only the listed mortality factors and inflation of the COI charges

10  deducted from policy owners' Account Values with undisclosed loads (Count I). Likewise, common

11  evidence will determine whether State Farm is deducting undisclosed expenses through the COI

12  charge, whether the Policy limits the amount of expenses State Farm is permitted to deduct on a

13  monthly basis to the fixed amount of the Expense charge, and whether State Farm is therefore in

14  breach of its contracts with policy owners (Count II). And common evidence will determine whether

15  State Farm converted policy owners' property by taking more of their money than authorized (Count

16  III). Finally, common evidence will determine whether State Farm's conduct of loading COI rates

17  with undisclosed factors is unfair and deceptive, occurs in trade or commerce, impacts the public

18  interest, and whether State Farm's omission of the fact that it includes such loads caused injury to

19  each class member, such that it has violated the Washington CPA (Count IV).

20         Each claim depends on a common course of conduct—State Farm entered into identical

21  contracts and uniformly loaded undisclosed factors into its COI rates for all policy owners. *See Vogt*,

22  2018 WL 1955425, at *3 (finding commonality satisfied because plaintiff's claims all turned on

23  interpretation of the standard form policy and State Farm's uniform incorporation of non-mortality

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

factors into its COI rates); *Bally*, 335 F.R.D. at 301-02 (finding commonality satisfied, rejecting State Farm's argument that individualized sales presentations prior to each class member's purchase of the Policy would result in different policy interpretations of each class member's standard form policy); *USAA COI*, 336 F.R.D. at 552 (finding commonality satisfied because "whether Defendant used factors outside those enumerated in the Class Policies to determine its COI Rates will rely on the same evidence throughout the class"); *Yue v. Conseco Life Ins. Co.*, 282 F.R.D. 469, 476 (C.D. Cal. 2012) (whether uniform, standard language contained in all insurance policies permitted insurer's adjustment of COI rates was a common question); *Transamerica COI*, 2017 WL 6496803, at *6 ("the issue of breach . . . is also common to all prospective class members"); *Phoenix COI*, 2013 WL 12224042, at *8 ("[B]reach of contract *is* the central issue in the case brought by [plaintiff] on behalf of the [] Class . . . .") (emphasis in original); *John Hancock COI*, 2017 WL 4284163, at *6 (finding that "liability issues are exclusively common issues uniting the class"); *Lincoln Life COI*, 330 F.R.D. at 380 (finding commonality met where claims "turn on common contentions of what factors . . . Lincoln Life used to calculate the . . . COI rate increase and whether insurance contracts allow for a rate increase based on those factors").

So, for every putative class member, there are many common questions of law, including:

- Is State Farm limited to using only the listed mortality factors when setting COI rates?

- Is State Farm permitted to deduct more in expenses than provided by the Policy's Expense charge?

- Is State Farm liable for conversion?

- Is State Farm's inclusion of undisclosed loads in COI rates an unfair or deceptive trade practice?

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Moreover, proving this case is dependent on similarly common questions of fact because State Farm calculated and took its deductions in the same manner for all policy owners:

- Did State Farm use factors not specified in the Policy to determine its COI rates?

- Did State Farm take more money from policy owners' Account Values than it was authorized to take?

Each of the foregoing questions is common to each policy owner and will be answered the same, one way or the other, for each member of the Class because State Farm's conduct was consistent as to all policy owners. *See* Witt Dec., ¶ 33, *id.*, Ex. E (Streily Tr.), 166:7-22, 171:21-172:11.

### C.      Plaintiff's claims are typical of those of the Class.

The typicality requirement is satisfied when the claims or defenses of the representative party are typical of those of the class. Rule 23(a)(3). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). "The commonality and typicality inquiries 'tend to merge' and both serve as 'guideposts for determining whether under the particular circumstances[,] maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" *Rosas*, 329 F.R.D. at 686 (quoting *Wal-Mart Stores*, 564 U.S. at 349 n.5). "Ultimately, representatives' class claims are typical if they are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Id.* (quoting *Hanlon*, 150 F.3d at 1020).

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

The typicality requirement is easily satisfied here. All putative class members were subject to identical policy language, State Farm performed (and breached) the Policy in the same way for each class member, and each putative class member was injured in the same way by that conduct. *See Vogt*, 2018 WL 1955425, at *5 (finding plaintiff's claims typical of those of the class because the claims arose from and related to the interpretation and application of the policy and the policy language, and State Farm's methodology for determining COI rates was uniform for all class members); *Bally*, 335 F.R.D. at 302 (same); *USAA COI*, 336 F.R.D. at 552 (finding typicality satisfied because "Plaintiff's Policy and the Class Policies are materially identical, and Defendant's alleged breach of these policies was uniform for both Plaintiff and the proposed class."); *John Hancock COI*, 2017 WL 4284163, at *10 (certifying class of policy owners because the plaintiff's claims were "typical, indeed, substantially identical, to those of the class" because the plaintiff and the class agreed to the same policy language); *Lincoln Life COI*, 330 F.R.D. at 380-81; *Transamerica COI*, 2017 WL 6496803, at *8.

### D. Plaintiff satisfies the adequacy requirement.

Adequacy requires that the class representative and class counsel "fairly and adequately protect the interests of the class." Rule 23(a)(4). "To determine whether the representative parties will adequately represent a class, the Court must examine whether the named Plaintiffs and their counsel (1) have any conflicts of interest with other class members and (2) will prosecute the action vigorously on behalf of the class." *Rosas*, 329 F.R.D. at 687 (citing *Ellis*, 657 F.3d at 985). Plaintiff satisfies the adequacy requirement.

*First*, Plaintiff's claims are consistent with those of the Class. He claims he was overcharged because State Farm failed to keep its promises in the Policy and to act within its authority in making deductions from his Account Value. Because the terms of the Policy are the same for everyone and

Tousley Brain Stephens PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

State Farm priced it uniformly, if State Farm used unauthorized factors to increase COI rates, Plaintiff and all other policy owners suffered excessive COI charges.

*Second*, Plaintiff has sufficient interest in the case to ensure vigorous representation. He has a personal monetary interest in recouping the overcharges. Indeed, Plaintiff's expert's analysis is that Plaintiff was harmed in the amount of $5,566.82 (the total lost Account Value resulting from wrongful COI deductions). Witt Dec., ¶ 59.

*Third*, Plaintiff has hired competent, experienced, and qualified counsel with expertise in class actions and cost of insurance cases, who have and will continue to prosecute the class claims vigorously. Norman E. Siegel and the attorneys at Stueve Siegel have significant experience in prosecuting class litigation, including several COI cases. The firm has tried class-action lawsuits to successful verdicts and has achieved significant monetary settlements for class members. In June 2018, Stueve Siegel and Miller Schirger successfully tried the *Vogt* case, a class action on the same Form 94030 policy at issue here, securing a jury verdict of $34,333,495.81 for Missouri policy owners. *See Vogt*, Dkt. 358 & 360. Moreover, Stueve Siegel and Miller Schirger have successfully secured settlements on behalf of policy owners in similar cases against Lincoln National Life Insurance Company, *see Lincoln Nat'l Life Ins. Co. v. Bezich*, No. 02C01-0906-PL-73 (Allen Co., Ind.), and John Hancock Life Insurance Company, *see John Hancock COI*, Case No. RG16 813803 (Alameda Co., Cal.).

Mr. Siegel and other lawyers in his firm have been appointed as class counsel in dozens of class actions throughout the country. *See* Siegel Dec., Ex. A (Stueve Siegel firm resume). Likewise, Miller Schirger has significant experience handling complex insurance contract disputes and brings needed experience in that area to the case. *See* Schirger Dec. In addition, the lawyers at the law firms Tousley Brain Stephens, Barrack Rodos & Bacine, and Sarraf Gentile LLP, also representing

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 14

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 ● FAX 206.682.2992

1    Plaintiff and the putative class here, bring substantial experience and class action expertise to this

2    case. *See* Stephens Dec.; Basser Dec.; Sarraf Dec.

3        *Fourth*, as explained below, there are no conflicts among the class representative, the

4    proposed class, or class counsel.

5        1.    **That State Farm's actual COI rates are, at rare times, lower than its mortality rates does not create an intra-class conflict.**

6

7        Plaintiff anticipates that State Farm will reassert its arguments made in *Vogt* and *Bally* that

8    there is an intra-class conflict because some class members would be worse off if State Farm charged

9    mortality-only rates. In *Vogt* and *Bally*, Mr. Witt's class-wide damages model revealed *some* months

10   for *some* class members who had held their policies for many years where State Farm's actual COI

11   rates were lower than what would have been charged if State Farm has used the contractual,

12   mortality-only rates. The parties referred to this event as the "cross-over" because State Farm's

13   mortality-only rates crossed-over (became higher than) its charged COI rates. Although Plaintiff

14   disputes that State Farm is entitled to an offset for this so-called cross-over credit, this merits

15   question need not be resolved now.[4] There is no risk, however, that this issue will create an intra-

     class conflict.

16

17       In *Vogt*, State Farm argued to the jury that it should get an offset against damages for those

18   months where State Farm charged some policy owners less than it was permitted to under the Policy.

19

     _____

20   [4] In *Vogt*, the plaintiff argued that this issue should not be submitted to the jury because State Farm had shown no legal
     basis to recover "undercharges" from its policy owners. In particular, the plaintiff argued that State Farm's decision to
21   *not* breach the Policy in certain months could not serve as the basis for assessing belated charges against policy owners,
     especially where State Farm had not identified any provision of the Policy that would allow it to retroactively recover
22   amounts it could have but did not charge policy owners through the COI charge, or that would allow it to make larger
     COI deductions in one month because it made lower COI deductions in another month. *See* Ex. 1 (*Vogt*, Dkt. 265
     (Plaintiff's Motion in Limine)) at 8-9. Likewise, in *Bally*, the plaintiff moved for summary judgment on State Farm's
23   offset defense premised on the cross-over for the same reasons, which is currently pending. *See Bally*, Dkt. 142 at ECF
     pages 23-24.

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

The jury agreed with State Farm and awarded damages that included an offset.[5] Giving State Farm this cross-over offset lowered total damages to the class by less than 3%. *See* Ex. 2 (Transcript of *Vogt* Trial, hereafter "*Vogt* Trial Tr."), 132:21-23, 135:17-137:7, 139:19-140:3. After applying the credit, a mere 29 (out of the nearly 24,000) class members were determined to have suffered no net loss, and received a judgment of $0. *See Vogt*, Dkt. 377-3 (*Vogt* Trial Ex. 242); Ex. 2 (*Vogt* Trial Tr.), 417:12-15. Similarly, in *Bally*, Mr. Witt determined that if State Farm were awarded an offset in that case, only 121 out of 82,581 class members would suffer no net loss, reducing total damages to the class by only 3.76%. *See* Ex. 3 (Witt Trial Report in *Bally*), ¶¶ 10 (d)-(e), ¶ 55 n.12. These results in *Vogt* and *Bally* illustrate two things: 1) the incidence of State Farm undercharging class members is extremely rare and has a minimal impact on the damages class members have suffered, and 2) no class member could be made worse off by the litigation. For example, the 29 individuals who did not suffer a net overcharge in *Vogt* because the "cross-over credit" fully offset overcharges from loaded COI rates, took nothing in the litigation, putting them in the same position economically as they would have been had no case been brought. Thus, like in *Vogt*, the *Bally* court concluded that the fact that State Farm had charged less than it was authorized to in some instances did not affect the reliability of Mr. Witt's damages model or create an intra-class conflict. *Bally*, 335 F.R.D. at 299-300, 303.

State Farm nevertheless argued that this cross-over phenomenon presented the prospect that some current policy owners would be harmed if State Farm *changed its rates* to match its mortality rates. The *Vogt* court rejected that argument because the lawsuit did not set rates going forward.

---

[5] Mr. Witt prepared a damages calculation that accommodated State Farm's offset defense, Ex. 2 (*Vogt* Trial Tr.), 132:19-24, which the jury adopted by awarding the exact amount of damages reflected in that calculation. Likewise, in *Bally*, Mr. Witt similarly calculated a damages total that assumed State Farm's offset defense was accepted. *See* Ex. 3 (Witt Trial Report in *Bally*), ¶ 10(e).

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 16

*Vogt*, 2018 WL 4937069, at *3, *aff'd* 963 F.3d at 767-68. And, where State Farm had already taken the position that it could set rates up to the Policy's maximum rates, the lawsuit benefited all class members by lowering the ceiling of what State Farm was permitted to charge. *Id*. Plaintiff's interpretation, which merely requires State Farm to remove undisclosed, non-mortality loads from COI rates, simply cannot harm any class member. Thus, the purported "cross-over" does not create an intra-class conflict.

        **2.**    **State Farm's contention that it "pooled" its mortality rates does not create an intra-class conflict.**

Similarly, Plaintiff anticipates that State Farm will argue that Mr. Witt's use of unpooled mortality rates to calculate damages creates an intra-class conflict. At the *Vogt* trial, the key issue for the jury was determining what rates reflected State Farm's mortality expectations for the class. The plaintiff argued that State Farm should have used rates reflecting those mortality expectations as its COI rates because those rates were determined using only the factors listed in the Policy. State Farm identified its mortality rates in the actuarial memoranda for Form 94030. At initial pricing, these rates were identified as a percentage of the SF88-91 mortality rate table[6]—an "unpooled" mortality table—meaning the table assigns a different mortality risk depending on how long it has been since a given policy was issued. Witt Dec., ¶ 39.[7] State Farm argued to the jury, however, that it had "pooled" the mortality rates shown in the SF88-91 before loading them with expenses and profits, and therefore, that damages should be determined using "pooled" mortality rates. A pooled rate table assigns the same mortality risk to each policy owner of the same age, sex, and rate class,

---

[6] The SF88-91 is a table internal to State Farm and was used by State Farm to determine its "pricing" mortality for Form 94030.

[7] The length of time elapsed since underwriting affects mortality risk because health conditions not present at the time of underwriting can develop.  *See* Ex. 2 (*Vogt* Trial Tr.), 134:8-23.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

regardless of how many years the policy has been held. *Id.* Using State Farm's litigation-created, pooled mortality estimate[8] to calculate damages would have reduced the overall damages to the class by $10,900,554.88. Ex. 2 (*Vogt* Trial Tr.), 132:21-23, 141:13-16. The jury rejected State Farm's contention that it pooled its mortality rates, and awarded damages using the unpooled mortality rates.[9] *See Vogt*, 963 F.3d at 768 ("Although time and again throughout this appeal State Farm reaffirms its reluctance to accept the jury's finding on this point, the fact remains that the jury concluded State Farm did not pool its mortality rates and any argument premised on pooling must fail."); *Bally*, 335 F.R.D. at 299 ("When faced with this question of fact in *Vogt*, the jury found that State Farm used the unpooled mortality rates to calculate the ultimate COI charges.").

Thus, the theory on which the plaintiff proceeded and prevailed at trial (that State Farm's mortality rates were not "pooled") *maximized* total class damages. However, State Farm argued that some class members' damages would actually have been higher if plaintiff had used pooled mortality rates in the damages model, and therefore, that there was an intra-class conflict between those class members and the rest of the class. Plaintiff anticipates State Farm will make the same argument here, and again, it should be rejected.

First, in certifying the classes in *Vogt* and *Bally*, those courts found that the question whether State Farm pooled its mortality rates has a common answer for all class members. *Vogt*, 2018 WL 1955425, at *4 (whether State Farm used a pooled mortality rate "will have a common answer for all of the members of the proposed class"); *Bally*, 335 F.R.D. at 300 (whether State Farm pooled its

---

[8]   Notably, in *Vogt*, the plaintiff chose not to challenge State Farm's unreliable "pooled" table, as State Farm had provided no evidence (until jury-rejected trial testimony) of its use.

[9]   Mr. Witt alternatively calculated a lost Account Value total that incorporated pooled mortality rates, Ex. 2 (*Vogt* Trial Tr.), 141:5-12, which the jury rejected by awarding the damages plaintiff requested using unpooled mortality rates (but providing State Farm an offset).

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

mortality rates "amounts to a factual dispute that does not create an intra-class conflict"). Thus, this common factual issue does not affect the propriety of class certification. *Id.*; *cf. Krueger v. Ameriprise Fin., Inc.*, 304 F.R.D. 559, 575 (D. Minn. 2014) (evidence and the law will determine when the breach occurred, "irrespective of the 'preferred' or 'optimal'" date for any single class member). Second, State Farm never produced a mortality table containing pooled rates, and never produced credible evidence that it did in fact pool its mortality rates before loading them with expenses and profits. It would have been detrimental to all class members for the plaintiff to adopt State Farm's unsupported position. Ex. 2 (*Vogt* Trial Tr.), 141:21-142:13. As the *Vogt* court found in later refusing to decertify the class, plaintiff "cannot be faulted for failing to argue a fact that was found untrue." *Vogt*, 2018 WL 4937069, at *3. Third, State Farm is wrong that an intra-class conflict is created simply because class members may have differing preferences for how damages are calculated. *Vogt*, 963 F.3d at 768 ("[E]ven if there are slightly divergent theories that maximize damages for certain members of the class, 'this slight divergence is greatly outweighed by shared interests in establishing [defendant's] liability.'") (quoting *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 79 (E.D. Va. 2006); citing Newberg on Class Actions § 3:62 (5th ed.) ("Courts generally reject the argument that an intra-class conflict exists when divergent theories of liability would benefit different groups within the class," including where "different class members desir[e] different methods of calculating damages.")); *Blackie v. Barrack*, 524 F.2d 891, 909 (9th Cir. 1975) ("[T]he conflict [over the calculation of damages], if any, is peripheral, and substantially outweighed by the class members' common interests.").

Second, because the jury in *Vogt* found as a matter of fact that State Farm did *not* pool its mortality rates, Plaintiff will argue in this case, just as the plaintiff did in *Bally* (*see Bally*, Dkt. 142 at ECF pages 17-19), that State Farm is precluded from arguing that it did pool its mortality rates.

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

In determining whether issue preclusion applies, the Court considers four factors: "(1) whether the issue decided in the prior adjudication was identical to the issue presented in the present action; (2) whether the prior adjudication resulted in a judgment on the merits; (3) whether the party against whom estoppel is asserted was a party or was in privity with a party to the prior adjudication; and (4) whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior suit." *James v. Paul*, 49 S.W.3d 678, 682 (Mo. 2001).[10] Each of these factors applies here. The issue of whether State Farm is collaterally estopped from arguing it pooled its mortality rates need not be decided now, but it does provide further support for Plaintiff's argument that he is an adequate representative of the Class in supporting a damages model that uses unpooled mortality rates.

### 3. Mr. Witt's use of mortality rates "blended" for tobacco use does not create an intra-class conflict.

Plaintiff also anticipates State Farm will argue that Mr. Witt's calculation of damages using mortality rates that do not differentiate between tobacco users and non-users[11] creates an intra-class conflict, as it did in *Bally*. The *Bally* court rejected this argument, finding, like it did in rejecting State Farm's pooled mortality arguments, that whether State Farm's mortality rates were blended for tobacco use was a common question of fact appropriate for class certification. *Bally*, 335 F.R.D. at 300.

*\*\*\**

---

[10] *See Daewoo Elecs. Am. Inc. v. Opta Corp.*, 875 F.3d 1241, 1244 (9th Cir. 2017) ("When it is necessary for a federal district court with diversity jurisdiction to determine the preclusive effect of a prior decision by a different federal district court sitting in diversity, the second court must apply preclusion principles according to the law of the initial court's state.").

[11] This means the mortality risk related to tobacco use is spread across all policy owners, or "blended." Ex. 2 (*Vogt* Trial Tr.), 162:15-17, 206:5-8; Witt Dec., ¶ 38.

---

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 20

Thus, the Court should conclude that Plaintiff and his counsel satisfy the adequacy requirement, and therefore appoint Plaintiff as the Class Representative and his counsel as Class Counsel.

## V.      Plaintiff Satisfies the Requirements of Rule 23(b)(3).

### A.      Predominance is satisfied.

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). In assessing predominance, the court considers the "relation between common and individual questions in a case." *Id.* "An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (internal quotations omitted). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Id.* (internal quotations omitted). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Id.* (internal quotations omitted).

#### 1.      Liability is subject to class-wide determination.

Because the Policy is a standardized, form contract, not subject to individual negotiation, the case is replete with common questions of law and fact that predominate over any individual questions. Courts routinely find that common issues predominate under these circumstances. *E.g.*, *Vogt*, 2018 WL 1955425, at *6 ("The major portion of the evidence on the claims for breach of

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

contract, conversion, and declaratory judgment is capable of consideration on a class wide basis. The terms of the Policy are the same for all class members. State Farm has not suggested that the determination of COI rates varied on a case-by-case basis. Thus, common questions predominate."); *Bally*, 335 F.R.D. at 304 (finding predominance satisfied; rejecting State Farm's argument that statute of limitations issues defeated predominance); *USAA COI*, 336 F.R.D. at 555 (finding predominance satisfied because the class policies were form policies that were subject to interpretation under a single state's law, and the insurer's performance was identical under each policy); *Phoenix COI*, 2013 WL 12224042, at *13 (predominance was satisfied because "[t]he insurance policies at issue contain provisions regarding how COI rates are set and what Phoenix can consider in making any changes in rates, and these terms are substantively identical for all the policies held by the members of the Classes"); *Transamerica COI*, 2017 WL 6496803, at *13 (predominance satisfied because "Plaintiffs' claims are premised on Transamerica's uniform policy language and uniform conduct"); *Lincoln Life COI*, 330 F.R.D. at 382-83 (predominance satisfied where the "contract language does not vary by individual class member" and there are "no individualized issues with respect to defendants' conduct towards members of the putative class"); *John Hancock COI*, 2017 WL 4284163, at *6-7.

### a.   Common questions predominate Plaintiff's breach of contract claims.

The substantive elements of Plaintiff's breach of contract claims require the same proof for each class member. To succeed on a breach of contract claim, the plaintiff must show: "(1) a valid agreement existed between the parties, the agreement was breached, and the plaintiff was damaged." *Univ. of Washington v. Govt Employees Ins. Co.*, 404 P.3d 559, 566 (Wash. App. 2017). Each of these elements will be proven through the same evidence for each class member. This is precisely

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 22

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   what was proven in *Vogt*, culminating in a class-wide jury verdict, and for which the plaintiff in

2   *Bally* has moved for summary judgment in favor of the California class.

3        Plaintiff's first breach of contract claim (Count I) requires the same proof for all class

4   members. The Policy authorizes State Farm to use only the listed mortality factors when determining

5   the COI rates used to calculate the COI charges that are deducted from Plaintiff's Account Value

6   each month. Count I alleges that State Farm breached and continues to breach the Policy by loading

7   COI rates with non-mortality factors, including without limitation, expense experience and profit

8   considerations. Compl. ¶¶ 38-43, 58-65.

9        Common proof can be used to calculate COI rates that are, as required by the Policy, based

10   on the mortality factors listed in the Policy, which can then be compared to the COI rates State Farm

11   actually used for each policy owner to determine the amount of the non-mortality loads and resulting

12   damages. *See* Witt Dec., ¶¶ 48-58. Because the same proof will determine State Farm's liability and

13   class members' damages, common questions predominate over any individual questions.

14        Plaintiff's breach of contract claim brought under Count II likewise requires the same proof

15   for all class members.  The Policy authorizes State Farm to deduct a fixed amount for expenses each

16   month. Count II alleges that State Farm breaches the Policy's fixed Expense charge provision by

17   adding expense loads into its expected mortality to determine its COI rates, thereby imposing

18   unauthorized expenses through its COI charges. Compl. ¶¶ 66-69. The same proof will be used for

19   all class members to determine whether State Farm, does, in fact, include unauthorized expense loads

20   in its COI charges. Because the same proof will determine State Farm's liability and class members'

21   damages, common questions predominate over any individual questions.

22

23

---

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 23

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**b.** **Common questions predominate Plaintiff's conversion claim.**

2   Because the Policy authorizes State Farm to deduct only certain amounts from policy

3   owners' Account Values, when State Farm takes more money out of policy owners' Account Values

4   than is authorized, it has the obligation to return those funds, and therefore has wrongfully converted

5   them. *See, e.g.*, *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 18 P.3d 1144, 1147 (Wash. App. 2001)

6   ("The tort of conversion is the act of willfully interfering with any chattel, without lawful

7   justification, whereby any person entitled thereto is deprived of the possession of it. Money may

8   become the subject of conversion . . . if that party [receiving it] had an obligation to return the money

9   to the party claiming it.") (internal quotations and citations omitted). Accordingly, if Plaintiff

10   succeeds on Counts I or II, he will succeed on Count III for the same reasons. *See Vogt*, 2018 WL

11   1955425, at *3 (certifying the plaintiff's conversion claim because like his breach of contract and

12   declaratory judgment claims, it "turn[ed] on interpretation of the Policy, which is a standard form

13   contract to which each putative class member was a party [and] . . . State Farm's determination of

14   COI rates, which was uniform."); *Bally*, 335 F.R.D. at 301 (same). Thus, predominance is satisfied

15   with respect to Plaintiff's conversion claim.

16

**c.** **Common questions predominate Plaintiff's Washington Consumer Protection Act claim.**

17

18   "The elements of a WCPA claim are (1) an unfair or deceptive act or practice; (2) occurring

19   in trade or commerce; (3) that impacts the public interest; (4) causes injury to the Plaintiffs' business

20   or property; and (5) involves a causal link between the practice and the injury." *Reichert v. Keefe*

21   *Commissary Network, L.L.C.*, 331 F.R.D. 541, 556 (W.D. Wash. 2019) (citing *Hangman Ridge*

22   *Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 780 (1986)). "Breach of a private

23   contract may affect the public interest and, thus, be actionable under the CPA." *Univ. of Wash.*, 404

P.3d at 567. There can be no dispute the first three elements will be resolved entirely through

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 24

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   common evidence as each considers State Farm's conduct, which was uniform as to each class

2   member. *See Reichert*, 331 F.R.D. at 556.

3   Predominance is satisfied as to the final two elements, injury and causation, as well. First,

4   even if some class members are found to not have suffered net overcharges because State Farm

5   prevails on its offset defense, "the Ninth Circuit has recognized that injury is just one element of a

6   WCPA claim that does not necessarily overwhelm the others." *Id.* (citing *Torres v. Mercer Canyons*

7   *Inc.*, 835 F.3d 1125, 1135 (9th Cir. 2016)). Accordingly, any differences in class member injuries

8   would not defeat predominance. Likewise, because Plaintiff's "causation theory" is premised on

9   State Farm's omission that it was including loads for profit and expense factors in its COI rates,

10  Plaintiff and the class are entitled to "[a] presumption of reliance," and "common questions therefore

11  predominate" regarding whether there is a casual link between State Farm's practice and each class

12  member's injury. *Id.* Therefore, predominance is satisfied with respect to Plaintiff's WCPA claim.

13  **2.   Damages can be determined on a class-wide basis.**

14  "[T]he overwhelming weight of authority holds that the need for individual damages

15  calculations does not diminish the appropriateness of class action certification where common

16  questions as to liability predominate." *Martin v. Johnson Controls Fire Prot., LP*, No. 2:19-CV-

17  00514-RAJ, 2020 WL 4747849, at *4 (W.D. Wash. Aug. 17, 2020). "This is particularly true where

18  damages can be computed according to some formula, statistical analysis, or other easy or essentially

19  mechanical methods." *D.C. by & through Garter v. Cty. of San Diego*, No. 15CV1868-MMA (NLS),

20  2017 WL 5177028, at *15 (S.D. Cal. Nov. 7, 2017) (internal quotations omitted). Here, Plaintiff's

21  expert can mechanically determine damages for each class member, further supporting certification.

22  If Plaintiff establishes State Farm breached its standard form Policy (Counts I and II),

23  converted class members' money (Count III), and/or engaged in unfair or deceptive trade practices

---

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 25

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

by omitting material information about State Farm's loading of COI rates (Count IV), each class member's claims would require only proof of damages.[12] The monetary harm to policy owners of State Farm's practice of loading undisclosed factors into COI rates, under Plaintiff's Counts I-IV, can be calculated in a straightforward way for each policy owner by comparing the COI rates State Farm actually used in determining COI charges with rates determined using only the factors listed in the Policy, and recalculating Account Values using the rates that do not include the undisclosed loads. Witt Dec., ¶¶ 48-58. This calculation can be performed using the policy-level data from administrative systems in place at State Farm. *Id.* ¶¶ 46-58. State Farm retains within its administrative systems a record of, and transaction information related to, premium payments, credited interest rates, policy loans, and policy charges, among other policy data. *Id.* Using this data, Account Values can be recalculated using alternate COI rates, while leaving unchanged the actual premium payments made, past investment experience, policy loans taken, and other policy charges. *Id.* ¶ 51. This is the same methodology Mr. Witt applied in *Vogt* and *Bally*.

Because State Farm maintains the data used in this methodology for every class member, this methodology does not require any class member to provide individual evidence. And, although the amount of losses for each policy owner may vary, because the same methodology and formulas are applied for each policy owner using State Farm's own policy owner data, calculating class-wide losses under this methodology is simply an administrative task capable of being performed on a

---

[12] In the *Vogt* case, after the district court certified the Missouri class, it granted partial summary judgment in favor of the class. *See Vogt*, Dkt. 335 at 1. The subsequent trial was limited to the determination of damages. *See id.* In *Bally*, the plaintiff has likewise moved for summary judgment in favor of the class, including on damages, relying in part on principles of collateral estoppel premised on the *Vogt* jury's factual determinations. *See Bally*, Dkt. 142 at ECF pages 17-19.

---

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

class-wide basis.[13] State Farm has produced policy-level data here, and Mr. Witt has calculated class-wide lost Account Values in the amount of $16,304,618.86.[14]

In *Vogt* and *Bally*, State Farm challenged the reliability of Mr. Witt's damages model. Despite its arguments being repeatedly rejected, Plaintiff expects State Farm to make the same arguments here.[15] These arguments should be rejected as a basis to deny class certification, for the reasons explained below.

> ### a.   State Farm's offset affirmative defense premised on the cross-over does not affect the reliability of Plaintiff's damages model.

In *Vogt* and *Bally*, State Farm argued that the fact that Mr. Witt's model *could* produce an "undercharge" in some months indicates the model does not reliably measure the portion of the COI that was determined using unlisted factors. State Farm is wrong. Instead, the rare occurrence of the cross-over simply indicates that State Farm's COI rates occasionally did not include a load for unlisted factors. State Farm's contention that the cross-over phenomenon is increasing, even if true, is irrelevant to the reliability of Mr. Witt's damages model. It simply reinforces Plaintiff's point that

---

[13] In the event the Court disagrees that damages can be measured class-wide, Plaintiff requests that the Court certify the common legal and factual issues under Rule 23(c)(4). *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ("Even if the common questions do not predominate over the individual questions so that class certification of the entire action is warranted, Rule 23 authorizes the district court in appropriate cases to isolate the common issues under Rule 23(c)(4)(A) and proceed with class treatment of these particular issues."). "Thus, for example, Rule 23(c)(4) may be used 'to separate the issue of liability from damages.'" *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 308 F.R.D. 630, 632 (N.D. Cal. 2015) (quoting *In re Nassau County Strip Search Cases*, 461 F.3d 219, 226 (2d Cir. 2006)).

[14] The aggregate lost Account Values calculated by Mr. Witt currently includes calculations for policy owners who are or will ultimately be excluded from the Class, either because they exclude themselves during the opt-out period, or because they are, for example, State Farm employees who have not yet been identified as such by State Farm. *See* Witt Dec., ¶ 10(d) n.2.

[15] "[C]ourts have struck a balance by applying *Daubert* at the class certification stage, but doing so in a manner that recognizes the specific criteria under consideration, as well as the differing stage of discovery and state of the evidence." *Moussouris v. Microsoft Corp.*, 311 F. Supp. 3d 1223, 1235 (W.D. Wash. 2018). Plaintiff contends that each of State Farm's challenges to the reliability of Mr. Witt's damages model goes to the merits of whether the model correctly measures damages, not the Rule 23 question of whether it is capable of measuring damages on a class-wide basis. Plaintiff nevertheless addresses these issues here to provide the Court context to these arguments.

---

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 27

State Farm's actual COI rates are not in step with its mortality rates, which are increasing as each policy owner ages. "[T]hat State Farm recoups profits and expenses in the earlier years of the Policy and refrains from doing so later—when more policies have lapsed or been surrendered, and when actual mortality costs increase—does not indicate a flaw in the damages model; instead, it more likely indicates a calculated business decision." *Vogt*, 2018 WL 4937330, at *5; *Bally*, 335 F.R.D. at 300 (same).

**b.   Calculating damages for policy owners who selected "Death Benefit Option 1" and for whom a death benefit was paid does not affect the reliability of Plaintiff's damages model.**

State Farm also argued in *Vogt* and *Bally* that Mr. Witt's damages model was unreliable because it calculates a lost Account Value for class members who selected Death Benefit Option 1 when they purchased their policies and were subsequently paid a death benefit. Upon death, a policy owner who selected Death Benefit Option 1 is entitled to the face amount of their policy, not the amount in the Account Value. State Farm thus argued that these class members should not have been awarded damages. However, as the district court and Eight Circuit concluded in *Vogt*, because State Farm deducted COI charges that included undisclosed loads from these policy owners' Account Values during their lives, Mr. Witt's damages model accurately calculates the amount of their damages. *See Vogt*, 963 F.3d at 770. Plaintiff's calculation of these class members' lost Account Values provides "the most reasonable basis for measuring the harm that was incurred during the life of the policyholders." *Id.* In any event, their presence in the Class does not impact the propriety of class certification because they are an identifiable group. *See Bally*, 335 F.R.D. at 300; *Vogt*, 2018 WL 4937330, at *6.

**c.   Mr. Witt's consideration of class members' tobacco use is reasonable.**

In *Vogt* and *Bally*, State Farm argued that Mr. Witt's model improperly ignored the effects

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

of class members' tobacco use. Those courts rejected that argument. Mr. Witt's damages methodology factors in tobacco use on a "blended" basis. Ex. 2 (*Vogt* Trial Tr.), 152:19-23, 205:24-206:8. He used mortality rates blended for tobacco/non-tobacco use because State Farm's pricing mortality rates—the rates that State Farm said measured its mortality expectations (*see id.* at 111:10-112:13, 113:16-114:7, 115:3-22, 120:11-121:3, Witt Dec., Ex. G (N.J. Actuarial Memo.) at 5)—accounted for tobacco use on a blended basis. Ex. 2 (*Vogt* Trial Tr.), 153:1-6, 155:4-14, 158:13-159:12. Therefore, Mr. Witt's use of the rates State Farm itself says reflected its mortality expectations properly measures harm to class members caused by State Farm's failure to use mortality-only rates.[16] *See Vogt*, 2018 WL 4937330, at *5 (rejecting State Farm's argument that Mr. Witt's model was deficient because it factored in tobacco use on a blended basis because there was no dispute State Farm's mortality expectations factored in tobacco use on a blended basis), *aff'd*, 963 F.3d at 769 (concluding "there was no need for the damages models to take [tobacco-use] into account as this was not a mortality factor listed in the policy"); *Bally*, 335 F.R.D. at 299 (same).[17] Thus, State Farm's arguments in opposition to class certification premised on Mr. Witt's use of mortality rates undifferentiated by tobacco status to calculate damages should be rejected.

> **3.      Class members' subjective understandings of the Policy's terms do not create individualized issues.**

State Farm will also likely contend, as it did in *Bally*, that each class member's subjective understanding of the Policy's terms is relevant to its interpretation, and therefore, whether State

---

[16] Were the Court to rule that Plaintiff's damages model must apply different mortality assumptions for tobacco users and non-users, Mr. Witt can adjust the mortality rates in the model accordingly. Witt Dec., ¶ 40.

[17] Likewise, for the reasons explained in Part IV(D)(2), *supra*, Mr. Witt's use of State Farm's unpooled pricing mortality rates is appropriate. Furthermore, just as on the issue of mortality-pooling, Plaintiff will argue that State Farm is collaterally estopped from arguing that its mortality-only rates were differentiated for tobacco use because the jury in *Vogt* necessarily found that they were not. *See Bally*, Dkt. 142 at ECF page 19.

---

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 29

Farm breached the Policy. *See Bally*, 335 F.R.D. at 301. In other words, it is State Farm's contention that the Policy could have different meanings for different policy owners.[18] Not only would this be an absurd outcome where State Farm has acted uniformly as to all class members in its performance of its form Policy, it is also legally incorrect. While certain types of extrinsic evidence related to the intent of the parties is admissible under Washington law to resolve an ambiguous insurance policy provision, "[u]nilateral or subjective purposes and intentions about the meanings of what is written do not constitute evidence of the parties' intentions." *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 871 P.2d 146, 149 (Wash. 1994). Rather, relevant extrinsic evidence is that which shows "an objectively manifested mutual intent[ion]" regarding the meaning of the policy. *Id.* And, where there are no "actual negotiations" over the policy's contents, there is no such "objectively manifested mutual intent[ion]" and therefore, no relevant extrinsic evidence with which to resolve an ambiguity. *See id.*; *see also Spratt v. Crusader Ins. Co.*, 37 P.3d 1269, 1272-73 (Wash. App. 2002) (stating "[u]sually the terms of insurance policies are not negotiated," and only if they were is "extrinsic evidence . . . admissible to show the parties' mutual intentions as manifested in the terms"); *Teck Metals, Ltd. v. Certain Underwriters at Lloyd's, London*, 735 F. Supp. 2d 1246, 1253 (E.D. Wash. 2010) (where an insurance policy was not negotiated, expressing doubt that "separate subjective understandings by each party as to [a policy term], even if the understandings are the same, would constitute relevant extrinsic evidence of an objective manifestation of mutual intent by the parties as to the meaning of the term"). "[L]eft with ambiguity in a nonnegotiated standard form insurance provision[,]" the "[u]nresolved ambiguity in insurance contract language is resolved

---

[18]   On June 1, 2020, Plaintiff served discovery on State Farm requesting documents and information regarding any statements by State Farm or its agents to policy owners informing them how the COI rates were determined. As of this filing, State Farm has produced no documents or information responsive to these requests. *See* Siegel Dec., ¶ 8.

---

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

against the insurer." *Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 882 P.2d 703, 721 (Wash. 1994).

Applying similar policy interpretation standards, the *Bally* court rejected State Farm's contention that the interpretation of the Policy could vary because policy owners received different agent sales pitches about the Policy, thus defeating class certification. 335 F.R.D. at 301-02. The court concluded that State Farm's contention that "its agents bind it to thousands of individual contracts that, despite the use of a standard form, all consist of materially different terms based on unwritten representations that each agent makes to a purchaser . . . runs counter to an axiom of contract law, that when there is a standardized agreement like the form contract at issue in this case, the agreement 'is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing.'" *Id.* at 302 (quoting Restatement (Second) of Contracts § 211(2)); *USAA COI*, 336 F.R.D. at 555 (same). The *Bally* court likewise noted that State Farm's argument that its Policy could have thousands of different meanings depending on "unwritten representations that each agent makes to a purchaser" ran "counter to language in the Policy stating that '[o]nly an officer has the right to change this policy. No agent has the authority to change the policy or waive any of its terms.'" *Id.* at 302 & n.4 (quoting the Policy at 11).

So too here. Because under Washington law the subjective understanding of each class member as to the meaning of the Policy's COI rates provision is not admissible to resolve any ambiguity in the Policy, these subjective understandings do not create individualized issues that defeat predominance. Likewise, because the Policy itself explicitly and unambiguously prevents an agent's statements to a policy owner from having any effect on the meaning of the Policy, what an agent may have told a prospective insured, even if otherwise admissible under Washington law,

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

could have no bearing on the interpretation of the Policy. Accordingly, class members' subjective understandings of the meaning of the Policy does not create individualized issues of policy interpretation.

      **4.**      **State Farm's statute of limitations defense does not create individualized issues.**

The *Vogt* and *Bally* courts both rejected State Farm's argument that individualized issues related to the statute of limitations defeated predominance. *Vogt*, 2018 WL 1955425, at *6, *aff'd*, 963 F.3d at 765-66; *Bally*, 335 F.R.D. at 304. Both courts concluded that there was no evidence indicating any policy owners knew or should have known State Farm was considering undisclosed factors in its determination of COI rates to result in the accrual of their claims, and thus, "'there [was] nothing to indicate that individual statute-of-limitations issues would predominate so as to make class certification impractical or inappropriate.'" *Bally*, 335 F.R.D. at 304 (quoting *Vogt*, 2018 WL 1955425, at *6).

Like Missouri and California, Washington applies the discovery rule to prevent the accrual of a plaintiff's claims where the plaintiff did not know, or in the exercise of due diligence would not have learned, of the other party's breach. *See Wm. Dickson Co. v. Pierce Cty.*, 116 P.3d 409, 414 (Wash. App. 2005). And, like the plaintiffs in *Vogt* and *Bally*, Plaintiff will demonstrate that the statute of limitations has not run on his claims or those of the Class because no class member had any way of knowing how State Farm determined the Policy's COI rates. Plaintiff's claims for relief and tolling allegations are not premised on any individualized evidence of statements from his insurance agent, State Farm, or anyone else. Instead, his claims are premised on uniform contract language and State Farm's uniform conduct. *See, e.g., Schramm v. JPMorgan Chase Bank, N.A.*, No. LA CV09-09442 JAK, 2011 WL 5034663, at *10, 11-12 (C.D. Cal. Oct. 19, 2011) (holding that a statute of limitations defense did not necessitate individual inquiries into when class members had

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 32

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1 actual or inquiry notice of their claims when their application depends on common evidence of the

2 defendant's conduct and noting that defendant's "speculation that some class members' claims may

3 be barred on the basis of actual knowledge is not sufficient to defeat certification") (citing *Cameron*

4 *v. E.M. Adams & Co.*, 547 F.2d 473 (9th Cir. 1976); *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th

5 Cir. 1975)). The same evidence will prove the claims and tolling allegations of the Class as a whole.

6 Thus, State Farm's statute of limitations defense does not undermine the predominance of the

7 common issues.

8   **B.**  **Superiority is satisfied.**

9   Finally, Rule 23(b)(3) requires that a class action be superior to other methods of

10 adjudication, an analysis that "encompasses the whole range of practical problems that may render

11 the class action format inappropriate for a particular suit." *Eisen v. Carlisle & Jacquelin*, 417 U.S.

12 156, 164 (1974). In determining whether superiority is satisfied, a court considers: "(A) the class

13 members' interests in individually controlling the prosecution or defense of separate actions; (B) the

14 extent and nature of any litigation concerning the controversy already begun by or against class

15 members; (C) the desirability or undesirability of concentrating the litigation of the claims in the

16 particular forum; and (D) the likely difficulties in managing a class action." Rule 23(b)(3).

17   Because this case involves a form contract and uniform Washington law governing its

18 interpretation, a class action will be just as manageable as a single plaintiff case. There are no other

19 class actions pending against State Farm making the claims asserted here on behalf of a Washington

20 class. In addition, because all class members' policies were issued in Washington, concentrating this

21 litigation in Washington is desirable. Class certification will greatly benefit the many policy owners,

22 all of whom are in the dark about how State Farm calculates COI charges because State Farm never

23 discloses its COI rates or the factors it uses to determine them, and all have an interest in securing

---

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    the just adjudication of their rights as against State Farm. *See Bally*, 335 F.R.D. at 305; *Vogt*, 2018

2    WL 1955425, at *7 (both finding superiority satisfied).

3    **V.     Rule 23(b)(2) Is Satisfied.**

4              With respect to Plaintiff's claim for declaratory judgment and injunctive relief at Count V,

5    the proposed Class satisfies Rule 23(b)(2) because State Farm "has acted or refused to act on grounds

6    that apply generally to the class, so that final injunctive or corresponding declaratory relief is

7    appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Determination of the merits

8    of Count V will turn on the same evidence supporting Counts I and II. As such, certification of Count

9    V under Rule 23(b)(2) is appropriate. *See Vogt*, 2018 WL 1955425, at *7 (certifying the plaintiff's

10   declaratory judgment claim under 23(b)(2) for purposes of interpreting the Policy because "the terms

11   of the Policy are the same for all potential class members, [and therefore] the interpretation will

12   result in one declaratory judgment applicable to all class members"); *Bally*, 335 F.R.D. at 305 (same,

13   stating: "The terms of Form 94030 are the same for all prospective Class members, so an injunction

14   or declaration relating to the contract terms will be uniform."); *see also In re Conseco*, 2005 WL

15   5678842, at *1, *8-9 (certifying Rule 23(b)(2) class in nearly identical case); *In re Conseco*, 270

16   F.R.D. at 532 (same); *see also Gooch v. Life Investors Ins. Co. of Am.*, 264 F.R.D. 340, 350 (M.D.

17   Tenn. 2009), *aff'd* 672 F.3d 402, 427-28 (6th Cir. 2012) (certifying Rule 23(b)(2) class involving

18   construction of rights under health insurance policies); *Leszczynski v. Allianz Ins.*, 176 F.R.D. 659,

19   673-74 (S.D. Fla. 1997) (certifying Rule 23(b)(2) class that sought declaration of rights under

20   insurance policies).

21

22

23

---

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 34

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

**<u>CONCLUSION</u>**

2      Because all of the required elements of Rule 23 are satisfied, Plaintiff's motion for class

3  certification should be granted, and Plaintiff Whitman should be appointed as the Class

4  Representative and his counsel appointed as Class Counsel.

5

       Dated: February 16, 2021

6                              TOUSLEY BRAIN STEPHENS PLLC

7                              By: *s/ Kim D. Stephens*
                               By: *s/ Rebecca L. Solomon*
8                                  Kim D. Stephens, P.S. WSBA #11984
                                   kstephens@tousley.com
9                                  Rebecca L. Solomon, WSBA #51520
                                   rsolomon@tousley.com
10                                 1700 Seventh Avenue, Suite 2200
                                   Seattle, Washington 98101
11                                 Tel:       206.682.5600/Fax: 206.682.2992

12                                 Norman E. Siegel (*admitted pro hac vice*)
                                   siegel@stuevesiegel.com
13                                 Lindsay Todd Perkins (*admitted pro hac vice*)
                                   perkins@stuevesiegel.com
14                                 Ethan Lange (*admitted pro hac vice*)
                                   lange@stuevesiegel.com
15                                 STUEVE SIEGEL HANSON LLP
                                   460 Nichols Road, Suite 200
16                                 Kansas City, Missouri 64112
                                   Tel:       816.714.7100/Fax: 816.714.7101
17

18                                 John J. Schirger (*admitted pro hac vice*)
                                   jschirger@millerschirger.com
19                                 Matthew W. Lytle (*admitted pro hac vice*)
                                   mlytle@millerschirger.com
20                                 Joseph M. Feierabend (*admitted pro hac vice*)
                                   jfeierabend@millerschirger.com
21                                 MILLER SCHIRGER, LLC
                                   4520 Main Street, Suite 1570
22                                 Kansas City, Missouri 64111
                                   Tel:       816.561.6500/Fax: 816.561.6501

23

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Stephen R. Basser (*admitted pro hac vice*)
sbasser@barrack.com
BARRACK, RODOS & BACINE
One America Plaza
600 West Broadway, Suite 900
San Diego, CA 92101
Tel:        619.230.0800/Fax:  619.230.1874

Joseph Gentile
joseph@sarrafgentile.com
Ronen Sarraf
ronen@sarrafgentile.com
SARRAF GENTILE LLP
14 Bond Street #212
Great Neck, NY 11021
Tel:        516.699.8890/Fax:  516.699.8968

*Attorneys for Plaintiff William T. Whitman*

4829-9146-5436, v. 2

PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
- NO. 3:19-CV-06025-BJR - 36

TOUSLEY BRAIN STEPHENS PLLC
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992