# Exhibit H



**Actuarial Standard
of Practice
No. 24**


# Compliance with the NAIC Life Insurance Illustrations Model Regulation


**Revised Edition**


**Developed by the
Task Force to Revise ASOP No. 24 of the
Life Committee of the
Actuarial Standards Board**


**Adopted by the
Actuarial Standards Board
December 2016**


**Doc. No. 184**

**ASOP No. 24—Doc. No. 184**

# T A B L E O F C O N T E N T S

Transmittal Memorandum                                                                                     iv

**STANDARD OF PRACTICE**

Section 1. Purpose, Scope, Cross References, and Effective Date                                       1
    1.1      Purpose                                                                                  1
    1.2      Scope                                                                                    1
    1.3      Cross References                                                                         2
    1.4      Effective Date                                                                           2

Section 2. Definitions                                                                               2
    2.1      Actual Experience                                                                        2
    2.2      Currently Payable Scale                                                                  2
    2.3      Disciplined Current Scale                                                                2
    2.4      Experience Factor                                                                        2
    2.5      Experience Factor Class                                                                  2
    2.6      Illustrated Scale                                                                        2
    2.7      Illustration Actuary                                                                     2
    2.8      Nonguaranteed Element                                                                    2
    2.9      Nonguaranteed Element Framework                                                          3

Section 3. Analysis of Issues and Recommended Practices                                              3
    3.1      Regulatory Requirements                                                                  3
    3.2      Appointment as Illustration Actuary                                                      3
    3.3      Illustrated Scale Requirements                                                           3
            3.3.1   Currently Payable Scale                                                       3
            3.3.2   Disciplined Current Scale                                                     3
            3.3.3   Interest Credited Rate                                                        3
    3.4      Developing the Disciplined Current Scale                                                 3
            3.4.1   Assumptions Underlying the Disciplined Current Scale                           3
            3.4.2   Relationship of Actual Experience to Disciplined Current Scale                 7
    3.5      Requirements for Self-Support                                                            7
    3.6      Requirements to Prevent Lapse-Supported Illustrations                                    8
    3.7      Illustrations on Policies In Force One Year or More                                      8
    3.8      Changes in Practice                                                                      9
    3.9      Reliance on Data or Other Information Supplied by Others                                 10
    3.10    Documentation                                                                           10

Section 4. Communications and Disclosures                                                            10
    4.1      Certification                                                                            10
    4.2      Notice of Error in Certification                                                         11
    4.3      Disclosures                                                                              11

**ASOP No. 24—Doc. No. 184**

## APPENDIXES

Appendix 1—Background and Current Practices                                          12
Appendix 2—Comments on the Exposure Draft and Responses                              14

## ASOP No. 24—Doc. No. 184

December 2016

**TO:**  Members of Actuarial Organizations Governed by the Standards of Practice of the Actuarial Standards Board and Other Persons Interested in Compliance with the NAIC Life Insurance Illustrations Model Regulation

**FROM:**  Actuarial Standards Board (ASB)

**SUBJ:**  Actuarial Standard of Practice (ASOP) No. 24

This document contains the final version of a revision of ASOP No. 24, *Compliance with the NAIC Life Insurance Illustrations Model Regulation*.

Background

The ASB adopted ASOP No. 24, *Compliance with the NAIC Life Illustrations Model Regulation*, in 1995. Since the promulgation of the original standard, life insurance product innovation has continued. In 2007, ASOP No. 24 was revised to be consistent with the current ASOP format and to update and reflect current, appropriate actuarial practices with respect to illustrations prepared in compliance with the *Life Insurance Illustrations Model Regulation* (*Model*). In 2015, the National Association of Insurance Commissioners released Actuarial Guideline 49 (AG 49) to clarify certain requirements of the *Model* related to policies with index-based interest credits and further amended AG 49 in September 2016. The ASOP was revised to reflect the changes effected through AG 49, to clarify certain guidance, and to be consistent with the current style and format used for ASOPs.

Exposure Draft

An exposure draft of this revision was issued in July 2016 with a comment deadline of September 30, 2016. Five comment letters were received and considered in making changes that were reflected in this final revised standard. For a summary of the issues contained in the exposure draft comment letters and the responses, see appendix 2.

There were no significant changes from the exposure draft.

The ASB thanks everyone who took time to contribute comments and suggestions on the exposure draft.

The ASB voted in December 2016 to adopt this standard.

**ASOP No. 24—Doc. No. 184**

Task Force to Revise ASOP No. 24

David Y. Rogers, Chairperson

| | |
|---|---|
| Jeremy A. Bill | Joseph N. Fick |
| Delmer F. Borah | Brian R. Lessing |
| Seth J. Detert | Michael L. Yanacheak |
| Gayle L. Donato | |

Life Committee of the ASB

David Y. Rogers, Chairperson

| | |
|---|---|
| David A. Brentlinger | Anthony J. Tokarz |
| James B. Milholland | Matthew J. Wininger |
| Henry W. Siegel | Candace J. Woods |

Actuarial Standards Board

Maryellen J. Coggins, Chairperson

| | |
|---|---|
| Beth E. Fitzgerald | Barbara L. Snyder |
| Christopher S. Carlson | Kathleen A. Riley |
| Darrell D. Knapp | Frank Todisco |
| Cande J. Olsen | Ross A. Winkelman |

*The Actuarial Standards Board (ASB) sets standards for appropriate actuarial practice in the United States through the development and promulgation of Actuarial Standards of Practice (ASOPs). These ASOPs describe the procedures an actuary should follow when performing actuarial services and identify what the actuary should disclose when communicating the results of those services.*

v

**ACTUARIAL STANDARD OF PRACTICE NO. 24**

**COMPLIANCE WITH THE
NAIC LIFE INSURANCE ILLUSTRATIONS
MODEL REGULATION**

**STANDARD OF PRACTICE**

Section 1. Purpose, Scope, Cross References, and Effective Date

1.1    Purpose—This actuarial standard of practice (ASOP) provides guidance to actuaries when performing professional services pursuant to applicable law based on the National Association of Insurance Commissioners (NAIC) *Life Insurance Illustrations Model Regulation* (*Model*) and related NAIC actuarial guidelines or when performing professional services with respect to illustrations represented to be in accordance with the *Model*.

1.2    Scope—This standard applies to actuaries when performing professional services to provide or support an actuarial certification pursuant to an applicable law based on the *Model*. The *Model* applies to illustrations, both for proposals and in-force policies, as described in the *Model*, for group and individual life insurance other than variable life insurance. The *Model* does not apply to individual and group annuity contracts, credit life insurance, and life insurance policies with no illustrated death benefits on any individual exceeding $10,000. NAIC Actuarial Guideline 49 (AG 49) is related to the *Model* and applies to certain life insurance policies that are subject to the *Model* and that provide interest credits linked to an external index or indices.

This standard applies to actuaries when performing professional services with respect to illustrations in the absence of applicable regulations if the illustrations are to be represented as being in accordance with the *Model*.

This standard does not apply to actuaries when performing professional services with respect to the determination of **nonguaranteed elements** payable. Determination of these items, as well as illustrations not included in the scope of this ASOP, are covered by ASOP No. 2, *Nonguaranteed Charges or Benefits for Life Insurance Policies and Annuity Contracts*, or ASOP No. 15, *Dividends for Individual Participating Life Insurance, Annuities, and Disability Insurance*.

If the actuary departs from the guidance set forth in this standard in order to comply with applicable law (statutes, regulations, and other legally binding authority), or for any other reason the actuary deems appropriate, the actuary should refer to section 4.

## ASOP No. 24—Doc. No. 184

1.3     Cross References—When this standard refers to the provisions of other documents, the reference includes the referenced documents as they may be amended or restated in the future, and any successor to them, by whatever name called. If any amended or restated document differs materially from the originally referenced document, the actuary should consider the guidance in this standard to the extent it is applicable and appropriate.

1.4     Effective Date—This standard is effective for actuarial services performed on or after April 30, 2017.


## Section 2. Definitions

The terms below are defined for use in this actuarial standard of practice. Definitions 2.2, 2.3, 2.6, 2.7, and 2.8 are intended to conform to those in the *Model*.

2.1     Actual Experience—Historical results and trends in those results.

2.2     Currently Payable Scale—A scale of **nonguaranteed elements** in effect for a policy form as of the preparation date of the illustration or declared to become effective within the next 95 days.

2.3     Disciplined Current Scale—A scale of **nonguaranteed elements**, certified annually by the **illustration actuary**, constituting a limit on illustrations currently being illustrated by an insurer that is reasonably based on actual recent historical experience and that satisfies the requirements set forth in the *Model*.

2.4     Experience Factor—A value or set of values that represents the **actual experience** of a policy form. Examples of **experience factors** include rates of mortality, expense, investment income, termination, and taxes.

2.5     Experience Factor Class—A group of policies for which **nonguaranteed elements** are determined by using common numerical values of a particular **experience factor**.

2.6     Illustrated Scale—A scale of **nonguaranteed elements** currently being illustrated that is not more favorable to the policyholder than the lesser of the **disciplined current scale** or the **currently payable scale**.

2.7     Illustration Actuary—An actuary who is appointed in accordance with the requirements set forth in the *Model*.

2.8     Nonguaranteed Element—Any element within an insurance policy that affects policy costs or values that is not guaranteed or not determined at issue. A **nonguaranteed element** may provide a more favorable value to the policyholder than that guaranteed at the time of issue of the policy. Examples of **nonguaranteed elements** include policy dividends, excess interest credits, mortality charges, expense charges, indeterminate premiums, and participation rates and maximum rates of return for indexed life insurance products.

2.9     Nonguaranteed Element Framework—The structure by which the insurer determines **nonguaranteed elements**. This includes the assignment of policies to **experience factor classes**, the method of allocating income and costs, and the structure of the formulas or other methods of using **experience factors**. For participating policies this would be the dividend framework defined in ASOP No. 15. For life policies within the scope of ASOP No. 2, the **nonguaranteed element framework** would include the concepts of policy class, determination policy, and anticipated **experience factors**.


Section 3. Analysis of Issues and Recommended Practices

3.1     Regulatory Requirements—The *Model* contains detailed instructions, technical requirements, and prohibitions regarding many aspects of illustrations. Actuaries providing professional services within the scope of this standard should be familiar with the *Model*, AG 49, any applicable state law based on the *Model* (including state variations), and this standard.

3.2     Appointment as Illustration Actuary—Before accepting an appointment as an **illustration actuary**, the actuary should determine that he or she meets the qualifications described in the *Qualification Standards for Actuaries Issuing Statements of Actuarial Opinion in the United States*. The appointment should be in writing and should describe the scope of the **illustration actuary's** responsibilities and establish the effective date. Acceptance of or withdrawal from the position should also be in writing.

3.3     Illustrated Scale Requirements—The actuary should ensure that the **illustrated scale** meets the requirements imposed by the *Model* as follows.

        3.3.1   Currently Payable Scale—The **illustrated scale** must not be more favorable to the policyholder than the **currently payable scale** at any duration.

        3.3.2   Disciplined Current Scale—The **illustrated scale** must be no more favorable to the policyholder than the **disciplined current scale** at any duration.

        3.3.3   Interest Credited Rate—For policies with interest credits linked to an external index or indices, the interest credited rate for the **illustrated scale** for each indexed account shall be limited in accordance with AG 49.

3.4     Developing the Disciplined Current Scale—The actuary should consider the following when developing the **disciplined current scale**:

        3.4.1   Assumptions Underlying the Disciplined Current Scale—The actuary should use experience as analyzed within the insurer's **nonguaranteed element framework** when setting **experience factors** underlying the **disciplined current scale**. To the extent **actual experience** is determinable, available, and credible, the actuary should use **actual experience** when setting **experience factors** underlying the

3

**disciplined current scale**. When such suitable data are lacking, **experience factors** should be derived in a reasonable and appropriate manner from **actual experience** of other similar classes of business. Similar classes may be found within the same company, may be found in other companies, or may be from other sources, in that order of preference. When determining the extent to which **actual experience** is credible, the actuary should refer to ASOP No. 25, *Credibility Procedures*. As required by the *Model*, the **experience factors** underlying the **disciplined current scale** may not include any projected trends of improvement nor any assumed improvements in experience beyond the effective date of the **illustrated scale**, except as provided in section 3.8.

The actuary should consider the following when setting assumptions:

a.   Investment Return—The **experience factor** used for investment income (the investment return factor) underlying the **disciplined current scale** should be reasonably based on recent actual investment experience, net of default costs, of the assets supporting the policy block.

If interest credits are linked to an external index or indices, then the investment return factor is sensitive to business or economic cycles. In such cases, the actuary should consider an appropriate time frame commensurate with such cycles and the characteristics of the underlying index or indices in determining recent **actual experience**. When determining the investment return factor for policies within the scope of AG 49, actuaries should comply with limitations imposed on the assumed earned interest rate underlying the **disciplined current scale**.

The actuary should have a reasonable basis for allocating investment income to policies, whether using the portfolio, segmentation, investment generation, or any other method. The actuary should develop the investment return factors using the same method that is used to allocate investment income to policies. The investment return factors may be net of investment expenses or, alternatively, investment expenses may be treated separately as expenses.

The actuary should use procedures that have a reasonable theoretical basis for determining the investment return factors. In determining the investment return factors, the actuary should reflect the insurer's actual practice for **nonguaranteed elements** with respect to realized and unrealized capital gains and losses, investment hedges, policy loans, and other investment items.

b.   Mortality—The actuary should base the mortality **experience factors** on the insurer's mortality experience, if credible, adjusted for risk class. In setting mortality **experience factors**, the actuary should consider credible variations by age, gender, duration, marketing method, plan, size of policy,

policy provisions, risk class, and other items (or a combination thereof) consistent with the insurer's structure of mortality **experience factor classes**. To the extent that the insurer's **actual experience** is not sufficiently credible, the actuary should consider using other credible industry mortality experience, appropriately modified to reflect the insurer's underwriting practices. If no credible industry mortality experience is available, the actuary should use professional judgment in modifying other sources of information (for example, general population mortality tables) in order to obtain the mortality assumption.

c.    Persistency—The actuary should base the premium continuation and policy persistency rates on the insurer's **actual experience**, if credible, for this or similar policy forms. The actuary should consider credible variations by age, gender, duration, marketing method, plan, size of policy, policy provisions, risk class, and other items (or a combination thereof) consistent with the insurer's structure of persistency **experience factor classes**. To the extent that the insurer's recent experience is not credible, the actuary should consider using other credible industry experience such as that from LIMRA, appropriately modified to reflect the actuary's professional judgment regarding differences between the policy form and the basis for the industry experience.

d.    Direct Sales Expenses—The actuary should reflect agent commissions, overrides, and other direct compensation determined by formula or incurred as a consequence of sales in a manner consistent with new business activities that generate the cost and are excluded from the expense factors given in sections (e)(1), (2), and (3) below.

e.    All Other Expenses—As described in the *Model*, the actuary should consider whether the minimum expenses to be used in the calculation of the **disciplined current scale** for all policy forms during the certification year are based on sections (1), (2), or (3) below and are subject to the criteria that follow them:

1.    Fully Allocated—Unit expenses reflecting total expenses recently incurred by the insurer when applied to both in force or newly issued policies are considered fully allocated. Some expenses are direct in that they can be specifically related to a particular policy form. Other expenses, such as general overhead costs, are indirect. The actuary should charge direct expenses to the groups of policies generating the related costs. Indirect expenses should be fully allocated using reasonable principles of expense allocation. Nonrecurring costs, such as systems development costs, may be spread over a reasonable number of years (for example, system lifetime) in determining the allocable expenses for a particular year.

2.　Marginally Allocated—Marginally allocated expenses are unit expenses calculated in a manner similar to fully allocated unit expenses except that indirect expenses, such as corporate overhead and general advertising, are not allocated to the policy forms.

3.　Generally Recognized Expense Table (GRET)—GRET unit expenses are obtained from an industry expense study based on fully allocated expenses representing a significant portion of insurance companies and approved for use by the NAIC or by the commissioner.

If no GRET is approved and available, the *Model* requires the use of fully allocated expenses. If a GRET is approved and available, the *Model* allows the use of either a GRET or fully allocated expenses. The *Model* permits the use of marginally allocated expenses only to the extent that they generate aggregate expenses that are at least as large as those generated by a GRET.

The actuary should make the comparison and choice of expense factor bases in the aggregate for all policy forms. The actuary should use the same unit expense basis for all policy forms tested. For example, the actuary should not use marginal expenses for one policy form and fully allocated expenses for another policy form. Once the actuary selects the unit expense basis, the actuary should use that basis for the entire certification year. When calculating unit expenses, the actuary should select average policy size and volume of sales assumptions that are appropriate for the policy form.

f.　Taxes—The actuary should reflect all cash flows arising from applicable taxes. Income taxes should be recognized in accordance with their impact by duration in the development of the **disciplined current scale**. Non-income taxes that are classified as investment taxes may be treated as a deduction from the investment return or may be treated separately. Other categories of taxes, such as premium taxes or employment taxes, may be handled separately or included in the category of all other expenses, as outlined in section 3.4.1(e) above.

Details of taxation vary widely, depending on the application of law and regulation in various jurisdictions. The actuary should consider the insurer's actual practices for allocating taxes for **nonguaranteed elements** in determining the tax **experience factor**.

g.　Changes in Methodology—When an insurer changes its methodology in determining **nonguaranteed elements** (for example, changing from portfolio rate methodology to a new money rate methodology or adding a new underwriting class), the actuary should appropriately modify

6

assumptions underlying the **disciplined current scale** to reflect the new methodology.

h.    Other Lines of Business—If other lines of business are considered investments of the illustrated block of business, the actuary should consider whether cash flows originating in such lines are recognized in the assumptions underlying the **disciplined current scale**. In deciding whether and how to reflect these cash flows, the actuary should consider the time horizon of the investment/investor relationship and the insurer's actual practice for reflecting these cash flows in determining **nonguaranteed elements**.

3.4.2    <u>Relationship of Actual Experience to Disciplined Current Scale</u>—The actuary should select assumptions underlying an insurer's **disciplined current scale** that logically and reasonably relate to **actual experience** as reflected within the insurer's **nonguaranteed element framework**. The actuary should reflect changes in experience once changes have been determined to be significant and ongoing.

**Actual experience** may exhibit improvements from year to year. As required by the *Model*, such trends in improvement may not be assumed to continue into the future beyond the effective date of the **disciplined current scale** underlying the illustration.

If trends indicate that significant and continuing deterioration in an **experience factor** has occurred or, in the actuary's professional judgment, is likely to occur between the date of the experience study and the effective date of the **disciplined current scale** underlying the illustration, the actuary should recognize such deterioration in determining the assumptions to be used.

When an insurer introduces a change in underwriting practice (for example, adding a new underwriting class) that is not expected to change the insured population, the actuary should divide the **actual experience** into the new underwriting classes in such a way that **actual experience** is reproduced in the aggregate.

3.5    <u>Requirements for Self-Support</u>—The *Model* requires every policy form illustrated by an insurer to be self-supporting according to the assumptions underlying the insurer's **disciplined current scale**. This requirement applies to the illustration of policies in force for less than one year.

The *Model* requires the following self-support test. At every illustrated point in time starting with the fifteenth policy anniversary (with the twentieth policy anniversary for second-or-later-to-die policies), the accumulated value of all policy cash flows, when using experience assumptions underlying the **disciplined current scale**, should be equal to or greater than the illustrated policyholder value, i.e., the cash surrender values and any other illustrated benefit amounts available at the policyholder's election. When policies

<u>ASOP No. 24—Doc. No. 184</u>

expire according to their terms prior to 15 years (20 years for second-or-later-to-die policies), the **illustrated scale** should be self-supporting at the point of expiration.

Each illustration reflects underwriting classification, as well as certain factors that are subject to policyholder choice. The underwriting classification includes factors such as age, gender, and risk class. Policyholder choices reflected in the preparation of an illustration include, but are not limited to, the size of policy, premium payment pattern, dividend option, coverage riders, and policy loans.

When performing the self-support test for a policy form, the actuary may test the underwriting classification and policyholder choice factors in aggregate if, in the actuary's professional judgment and subject to the limitations of AG 49, such combinations would be appropriate. If testing is done in the aggregate, the actuary should select assumptions for the distribution between underwriting classes and policyholder choices that are based on **actual experience**, if available, recognizing possible shifts in distribution toward any portions of the business that do not meet the self-support test in their own right.

When performing the self-support test on policy forms with 1) interest credits linked to an external index or indices and 2) more than one available indexed account, actuaries must comply with the limitations on aggregation of indexed accounts imposed by AG 49, if applicable.

3.6     <u>Requirements to Prevent Lapse-Supported Illustrations</u>—The *Model* prohibits illustration of **nonguaranteed elements** in policies that are deemed to be lapse-supported and establishes a lapse-support test to demonstrate compliance with this requirement. The lapse-support test requires that the policy form in question be self-supporting under the same assumptions and with the same level of aggregation as described in section 3.5, changing only the persistency assumption. The modified persistency rate assumption will use the persistency rates underlying the **disciplined current scale** for the first five policy years and 100% policy persistency thereafter. In performing the lapse-support test for a policy form, the actuary should assume that benefits that are conditional only upon policy continuation will be provided to all policies in force at the end of year five and surviving to the date of such benefits. For policy forms that provide benefits that are conditional upon certain premium payment patterns, the actuary should consider whether all policies in force to the end of year five will qualify for such benefits.

As stated in the *Model*, policy forms that can never develop nonforfeiture values, such as certain term coverages, are exempt from the lapse-support test. The *Model* requires that these policy forms pass the self-support requirement.

3.7     <u>Illustrations on Policies In Force One Year or More</u>—The **illustration actuary** is required to annually certify that the **disciplined current scale**, for both new business and in force illustrations, complies with the *Model* and this standard. The *Model* requires that the **illustrated scale** be no more favorable to the policyholder than the lesser of the **currently payable scale** and the **disciplined current scale**. The **disciplined current scale**, for a

<u>ASOP No. 24—Doc. No. 184</u>

policy in force one year or more, continues to be in compliance with the *Model* and this standard, if any of the following apply:

a.    the **currently payable scale** has not been changed since the last certification and the **illustration actuary** determines that experience since the last certification does not warrant changes in the **disciplined current scale** that would make it significantly less favorable to the policyholder; or

b.    the **currently payable scale** has been changed since the development of the **disciplined current scale** most recently certified only to the extent that changes are reasonably consistent with changes in experience assumptions underlying the **disciplined current scale**; or

c.    the **currently payable scale** has been made less favorable to the policyholder since the last certification and the change is more than the change in the current experience would dictate.

If none of the conditions in (a), (b), or (c) above is met, the **illustration actuary** should (1) review the **experience factors** underlying the **disciplined current scale** and revise as necessary, and (2) develop a new **disciplined current scale** for this policy form.

In the context of in-force illustrations for policies receiving distributions of accumulated surplus or prior gains (including those resulting from the formation of a closed block), the actuary should consider including these distributions both in the **disciplined current scale** and in the **illustrated scale**, only to the extent that (1) such distributions are currently being paid to the policyholders by the insurer, and (2) the insurer has indicated its intent and ability to continue to do so for the foreseeable future. Such accumulated surplus or prior gains may be used in conducting the tests for self-support and lapse-support.

3.8    <u>Changes in Practice</u>—An insurer may introduce certain changes in the way it conducts its business, which may have significant positive or negative effects on future experience. If the action has already occurred, but not enough time has elapsed for it to be reflected in the insurer's **actual experience**, it may nevertheless be reflected in the assumptions underlying the **disciplined current scale**. The actuary should consider recognizing any changes, such as the following, to the extent known to the actuary:

a.    a change in underwriting standards, such as introducing preferred risk, guaranteed issue, or simplified underwriting;

b.    a change in commission levels;

c.    a reduction in staff;

d.    a change in investment policies, such as changes in hedging activities and changes in asset class allocations; and

<u>ASOP No. 24—Doc. No. 184</u>

e.      new or revised reinsurance agreements.

In order to be reflected in the **disciplined current scale**, such changes should have already been made and not simply be planned for in the future.

3.9     <u>Reliance on Data or Other Information Supplied by Others</u>—When relying on data or other information supplied by others, the actuary should refer to ASOP No. 23, *Data Quality*, for guidance.

3.10    <u>Documentation</u>—The documentation that supports the actuarial certification described in section 4.1 with respect to the construction of the **disciplined current scale**, maintained in conformance with ASOP No. 41, *Actuarial Communications*, should include the following:

a.      description of, and rationale for, the investment income, mortality, persistency, expense, tax, and other assumptions;

b.      description of, and rationale for, any other calculation methods and assumptions used to carry out the tests and demonstrations described herein; and

c.      demonstration that the self-support and lapse-support tests have been met.


<u>Section 4. Communications and Disclosures</u>

4.1     <u>Certification</u>—The *Model*[1] requires the **illustration actuary** to certify annually that the **illustrated scale** and the **disciplined current scale** are in compliance both with the requirements as set forth in the *Model* and with the requirements set forth in this ASOP. Certifications should also be made for newly introduced forms before a new policy form is illustrated.[2]

The certification should disclose the following:

a.      for business issued in the last five years and within the scope of the certification, whether or not the **currently payable scale** has been reduced since the last certification for reasons unrelated to experience changes;[3]

b.      the choice of expense assumptions as discussed in section 3.4.1(e);[4]

c.      any inconsistencies between the illustrated **nonguaranteed elements** for new policies and similar in-force policies;[5] and

---

[1] As stated in *Model* sections 11.B, C(5)-(6), and D(1)(a).

[2] As stated in *Model* section 11.D(1)(b).

[3] As stated in *Model* section 11.C(5).

[4] As stated in *Model* section 11.C(6).

      d.      any inconsistencies between the illustrated **nonguaranteed elements** for new and in-force policies and the **nonguaranteed element** amounts actually paid, credited, or charged to the same or similar forms.[6]

As required by the *Model*,[7] if an **illustration actuary** is unable to certify the **illustrated scale** for any policy form the insurer intends to use, the actuary should notify the board of directors of the insurer and the commissioner promptly of his or her inability to certify.

4.2    Notice of Error in Certification—As required by the *Model*,[8] if an error in a previous certification is discovered, the **illustration actuary** (or successor **illustration actuary**) shall promptly notify the board of directors of the insurer and the commissioner.

The certification should be considered in error if the certification would not have been issued or would have been materially altered had the error not been made. The certification should not be considered to be in error solely because of data that become available, or information concerning events that occurred, subsequent to the certification date.

4.3    Disclosures—The actuary should include the following, as applicable, in the certification:

      a.      the disclosure in ASOP No. 41, section 4.2, if any material assumption or method was prescribed by applicable law (statutes, regulations, and other legally binding authority);

      b.      the disclosure in ASOP No. 41, section 4.3, if the actuary states reliance on other sources and thereby disclaims responsibility for any material assumption or method selected by a party other than the actuary; and

      c.      the disclosure in ASOP No. 41, section 4.4, if, in the actuary's professional judgment, the actuary has otherwise deviated materially from the guidance of this ASOP.

---

[5] As stated in *Model* section 11.C(5).

[6] See note 5 above.

[7] As stated in *Model* section 11.E.

[8] As stated in *Model* section 11.D(2).

ASOP No. 24—Doc. No. 184

**Appendix 1**

**Background and Current Practices**

*Note*: This appendix is provided for informational purposes but is not part of the standard of practice.

Background

Sales illustrations have been of concern to regulators for over a century, going back at least to the Armstrong Commission (1905-1906). Developments prior to 1995 involving insurance products, illustration technology, and the volatility of financial markets led to heightened concern and to the adoption of the NAIC *Life Insurance Illustrations Model Regulation* (*Model*).

Actuaries have been involved in the process of establishing scales of dividends and other nonguaranteed elements to be illustrated by insurance companies for decades. Until the 1980s, nonguaranteed elements were essentially synonymous with participating dividends, and the sources of scales of illustrated dividends were tables prepared by the respective insurance companies. Since that time, there has been a proliferation of policies with nonguaranteed elements other than dividends. Improving technology has also made possible the development of software that enables insurance agents to produce sales illustrations based on a variety of assumptions, potentially with little or no direct involvement on the part of the insurer. The *Model* assigns major responsibilities regarding compliance to an actuary who is appointed by the insurer.

Illustrations generally have three primary uses:

1.  to show the buyer the mechanics of the policy, i.e., how a particular financial design or concept works, and how policy values or premium payments may change over time;

2.  to compare the cost or performance of different policies; and

3.  to show how the policy fits into the policyholder's financial plan.

A sales illustration simply shows the performance of one particular scale of nonguaranteed elements into the future. Actual nonguaranteed elements will almost certainly vary from those illustrated. Different policies will experience different variances from illustrated values.

Current Practices

Since the promulgation of the original standard in 1995, product innovation has continued as pricing structures have been refined, secondary guarantees have been developed, an increasing variety of equity-indexed and other indexed life insurance products have been developed, and

12

additional new underwriting classes have been added. Until the release of Actuarial Guideline 49 (AG 49), it had been common practice to illustrate these new products pursuant to the *Model* and this standard as it existed. With the introduction of AG 49, illustrations of contracts providing interest credits linked to an external index or indices will be subject to AG 49 and this updated standard.

Varying degrees of flexibility are provided by insurers to their agents in customizing sales illustrations, depending somewhat on whether the producers are brokers or career agents. Generally, the tools that insurers provide allow flexibility with respect to column selection and formats, variations on nonguaranteed elements, and different premium patterns. Along with this flexibility may be the requirement that the buyer also be given a ledger illustration in an insurer-approved format.

ASOP No. 24—Doc. No. 184

## Appendix 2

## Comments on Exposure Draft and Responses

The exposure draft of this revised ASOP, *Compliance with the NAIC Life Insurance Illustrations Model Regulation*, was issued in June 2016 with a comment deadline of September 30, 2016. Five comment letters were received, some of which were submitted on behalf of multiple commentators, such as by firms or committees. For purposes of this appendix, the term "commentator" may refer to more than one person associated with a particular comment letter. The Task Force to Revise ASOP No. 24 carefully considered all comments received, reviewed the exposure draft, and proposed changes. The Life Committee and the ASB reviewed the proposed changes and made modifications where appropriate.

Summarized below are the significant issues and questions contained in the comment letters and responses.

The term "reviewers" in appendix 2 includes the Task Force to Revise ASOP No. 24, the Life Committee, and the ASB. Also, unless otherwise noted, the section numbers and titles used in appendix 2 refer to those in the exposure draft.

| SECTION 3. ANALYSIS OF ISSUES AND RECOMMENDED PRACTICES | |
|---|---|
| **Section 3.4.1(c), Assumptions Underlying the Disciplined Current Scale** | |
| Comment | One commentator said that the Life Insurance Marketing and Research Association is now LIMRA. |
| Response | The reviewers agree and made this change. |
| **Section 3.4.2, Relationship of Actual Experience to Disciplined Current Scale** | |
| Comment | One commentator inquired if the removal of the word "promptly" reflected a change in guidance relative to how quickly changes in experience should be reflected when determined to be significant and ongoing. |
| Response | The reviewers believe that the guidance is substantially unchanged, and therefore made no change. |
| **Section 3.5, Requirements for Self-Support** | |
| Comment | One commentator noted that if more than one Benchmark Index Account is used for an illustrated policy, under the latest adopted version of AG 49 each set of index accounts corresponding to each Benchmark Index Account must independently pass the self-support and lapse-support tests, whereas the exposure draft indicates that testing in the aggregate would be permissible. |
| Response | The reviewers agree and modified this section to reflect the comment. |

**ASOP No. 24—Doc. No. 184**

| Section 3.6, Requirements to Prevent Lapse-Supported Illustrations | |
|---|---|
| Comment | One commentator recommended including a drafting note with respect to the wording change to ensure that practitioners understand that the change was made to clarify rather than to reflect a change in guidance. |
| Response | The reviewers believe that the wording changes clarify the guidance with respect to the lapse-support test and therefore made no change in response to this comment. |
| Comment | One commentator posed specific questions related to the application of the lapse-support test, one involving the use of experience beyond the fifth policy year when testing previously issued policy forms, and a second involving the impact of reinsurance on the lapse-support and self-support tests. |
| Response | The reviewers believe that the current language covers these issues at the appropriate level of detail and therefore made no change in response to this comment. This comment has been referred to the Academy's Life Illustration Work Group for possible inclusion in a practice note. |
| Comment | One commentator suggested clarifying the application of the lapse-support test to flexible premium policy forms that are not funded to keep the policy in force for its full term. |
| Response | The reviewers believe that the current language covers these issues at the appropriate level of detail and therefore made no change in response to this comment. This comment has been referred to the Academy's Life Illustration Work Group for possible inclusion in a practice note. |
| Section 3.8, Changes in Practice | |
| Comment | One commentator suggested changing section 3.8 to clarify how the last sentence is associated with the rest of that section. |
| Response | The reviewers agree and revised this section. |