The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM T. WHITMAN,<br>Individually and on behalf of all others similarly situated<br><br>       Plaintiff,<br><br>  v.<br><br>STATE    FARM    LIFE    INSURANCE COMPANY,<br>an Illinois corporation<br><br>       Defendant. | Civil Action No. 3:19-cv-6025-BJR<br><br>**ORDER GRANTING MOTION FOR CLASS CERTIFICATION** |

## I.       INTRODUCTION

Plaintiff William T. Whitman brings this putative class action against Defendant State Farm Life Insurance Company ("State Farm"), challenging the insurance company's implementation of its Form 94030 Universal Life Insurance Policy. Currently before the Court is Plaintiff's Motion for Class Certification. Dkt. No. 67. Having reviewed the motion and opposition thereto, the parties' supplemental briefing, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

## II.    BACKGROUND

In 1994, Plaintiff purchased a flexible premium adjustable whole life insurance policy—Form 94030—from State Farm (hereinafter "the Policy"). Unlike a standard term life insurance policy that simply pays a death benefit, the Policy includes a savings component whereby Plaintiff paid premiums that were deposited into an interest-bearing account. The parties refer to this as the "Account Value." The Account Value is the property of the policyholder and is held in trust by State Farm.

The terms of the Policy allow State Farm to take monthly deductions from the Account Value for: (1) the cost of insurance ("COI"), (2) charges for any riders, and (3) a $5 expense charge. This lawsuit centers on the COI charges. The Policy provides the following regarding the COI rates:

> **Monthly Cost of Insurance Rates.**
> *These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class.* A rate class will be determined for the Initial Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Dkt. 1, Ex. 1 State Farm Life Insurance Company Policy ("the Policy") at 10 (emphasis added).

Plaintiff contends that the foregoing expressly enumerates what factors State Farm is permitted to use to determine the monthly deduction for COI—*i.e.*, his age on the policy

anniversary, sex, and applicable rate class. According to Plaintiff the insurance company "loaded" additional unauthorized factors into determining the monthly COI rate, including expenses, taxes, investment earnings, and profit. He contends that including these additional factors substantially increased the amount deducted each month from his Account Value. In fact, Plaintiff maintains that over the life of his Policy, his COI charges were, on average, more than 140% of what they would have been if State Farm had not included the additional factors in the COI rate. Plaintiff further alleges that by including these factors when determining the COI rate, State Farm impermissibly deducted expenses from the Account Values in an amount more than the fixed $5 expense charges expressly authorized by the Policy.

Plaintiff claims that State Farm treated all Form 94030 policyholders uniformly and, as such, all policyholders were subject to monthly COI rate deductions that were calculated using the same additional factors in violation of the terms of the Policy. Plaintiff instituted this putative class action, bringing claims for breach of contract (Counts I and II), conversion (Count III), violation of the Washington Consumer Protection Act ("WCPA") (Count IV), and declaratory and injunctive relief (Count V). He asserts that the following common questions of law apply the claims:

- Is State Farm limited to using only the listed factors when setting COI rates?

- Is State Farm permitted to deduct more in expenses than provided by the Policy's expense charge?

- Is State Farm liable for conversion?

- Is State Farm's inclusion of undisclosed factors when setting the COI rates an unfair or deceptive trade practice?

He alleges that the following common questions of fact apply to each of the claims:

- Did State Farm use factors not specified in the Policy to determine its COI rates?

- Did State Farm take more money from policyholders' Account Values than it was authorized to take?

Dkt. No. 67 at 11-12.

Plaintiff now moves this Court to certify the following class:

All persons who own or owned a universal life insurance policy issued by State Farm on Form 94030 in the State of Washington whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction.[1]

Dkt. No. 67 at 7.

## III.   LEGAL STANDARD

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individually named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). A court may certify a class only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). The court must also find that at least one of the following three conditions is satisfied: (1) the prosecution of separate actions would create a risk of: (a) inconsistent or varying adjudications, or (b) individual adjudications dispositive of the interests of other members not a party to those adjudications; (2) the party opposing the class has acted or refused to act on grounds generally applicable to the

---

[1] Excluded from the class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and policies that insured males with an age of zero and terminated in the first policy year.

1
2
3
4
5
6
7

class; or (3) questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See id*. 23(b). The party seeking certification bears the burden of showing that each of the four requirements of Rule 23(a) and at least one requirement of Rule 23(b) are met. *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *amended by* 273 F.3d 1266 (9th Cir. 2001).

8
9
10
11
12
13
14
15
16

When adjudicating a motion for class certification, the court accepts the allegations in the complaint as true so long as those allegations are sufficiently specific to permit an informed assessment as to whether the requirements of Rule 23 have been satisfied. *Blackie v. Barrack*, 524 F.2d 891, 901 & n.17 (9th Cir. 1975). The merits of the class members' substantive claims are generally irrelevant to this inquiry. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013).

### IV.   DISCUSSION

17
18
19
20
21
22
23
24
25

Plaintiff argues that the proposed class satisfies the "numerosity, commonality, typicality, and fair and adequate representation" requirements of Rule 23(a), as well as the "commonality and predominance" requirement of Rule 23(b)(3).[2] State Farm counters that Plaintiff cannot satisfy the typicality and adequacy requirements of Rule 23(a), nor the commonality and predominance test under Rule 23(b)(3). State Farm also challenges the relevance and reliability of

26
27

---

[2] Plaintiff also seeks class certification for his declaratory and injunctive relief claim (Count V) pursuant to Rule 23(b)(2).

the testimony of Plaintiff's damages expert, Scott Witt. The Court will address each argument in turn.

### A.    Rule 23(a)'s Typicality and Adequacy Requirements[3]

### 1.    Typicality

Rule 23(a)'s typicality requirement is met if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Representative claims need only be "reasonably co-extensive with those of the absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes*, 564 U.S. 338. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted)).

 Here, Plaintiff argues that he easily satisfies the typicality requirement because all "putative class members were subject to identical policy language, State Farm performed (and breached) the Policy in the same way for each class member, and each putative class member was injured in the same way by that conduct." Dkt. No. 67 at 13. State Farm counters that Plaintiff is

---

[3] State Farm does not contest that Plaintiff satisfies the numerosity and commonality requirements of Rule 23(a) and with good reason. With a proposed class of 11,000 members, the class is sufficiently numerous to render joinder of all members impracticable. *See Bally v. State Farm*, 335 F.R.D. 288, 301 (noting that numerosity is satisfied with proposed classes of "forty or more members"). And given that Plaintiff's claims in this action all turn on the interpretation of a standard form contract, commonality is likewise satisfied. *See Vogt v. State Farm*, 2018 WL 1955425, *2 (W.D. Mo. April 24, 2008) (noting that commonality under Rule 23(a) "is easily satisfied in most cases").

6

not typical of this class because "he will face a variety of defenses under Washington law that a better informed and more diligent plaintiff might not face." Dkt. No. 83 at 27. Specifically, State Farm alleges that Plaintiff did not read the Policy language, that he agrees State Farm is entitled to make a profit on the Policy, and that he was aware of the consumer advocacy organization that eventually put him in touch with his attorney as early as 2011, thereby rendering his claim time-barred.

The Court concludes that Plaintiff satisfies the typicality requirement. Plaintiff's claims as well as each of the putative class members' claims all arise out of the interpretation and application of the Policy—a standard form, non-negotiated insurance policy. If Plaintiff's allegations are proven true at trial, each class member will have suffered the same injury that was caused by the same course of conduct by State Farm. The Court finds it doubtful that Plaintiff is unique because he did not read the Policy before purchasing it or that he assumed that State Farm would profit from the Policy. And, for reasons discussed *infra*, this Court is not persuaded that Plaintiff's claim is time-barred. Thus, typicality is satisfied here. *See Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170-NKL, 2018 WL 1955425, at *5 (W.D. Mo. Apr. 24, 2018) (finding typicality because plaintiff's "claims and the claims of the putative class members all arise from and relate to the interpretation and application of the Policy" and "State Farm's methodology for determining the COI rates were uniform for all class members"), *aff'd*, 963 F.3d 753 (8th Cir. 2020); *Bally v. State Farm Life Ins. Co.*, 335 F.R.D. 288 (N.D. Cal. 2020) (finding typicality because plaintiff's "claims and the claims of the putative Class members all arise out of the interpretation and application of the Form 94030 Policy, satisfying the typicality requirement").

2.      **Adequacy**

The adequacy requirement under Rule 23(a)(4) asks whether the class representative "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). It serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157-58 n.13 (1982)). In analyzing whether the adequacy requirement has been met, courts ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Evon v. Law Offices of Sidney Mickell*, 688 F.3d 1015, 1031 (9th Cir. 2012) (quoting *Hanlon*, 150 F.3d at 1020).

Plaintiff argues that he readily satisfies the adequacy requirement because his claims are identical to those of the putative class, he has a financial interest in recouping the amount State Farm allegedly overcharged him, and he has retained qualified attorneys who have successfully tried a class action arising out of the same life insurance policy—Form 94030—at issue here, securing a jury verdict of over $34 million for Missouri policyholders. State Farm counters that Plaintiff lacks the minimal knowledge necessary to adequately represent the class in this case.

Having reviewed Plaintiff's deposition transcript, this Court finds that while Plaintiff lacks intimate familiarity with the details of the complex standard form that is the Policy, he expects State Farm to comport with the terms of the Policy, and he has proven willing to act in the best interest of the putative class members by retaining well-qualified counsel to zealously represent the class' interests in this matter. He has also participated in discovery, including appearing for his deposition. Thus, the Court finds that Plaintiff has satisfied the adequacy requirement. *See* 1 MCLAUGHLIN ON CLASS ACTIONS § 4:29 (17th ed.) (noting that although "[d]efendants have often

challenged a proposed representative on the ground that he or she lacks sufficient familiarity with the facts alleged by their counsel," "[c]ourts have not required representatives to demonstrate a great deal of familiarity with the action in order to satisfy the requirement that the class have a conscientious representative plaintiff"). *See also Vogt*, 2018 WL 1955425, at *5 (W.D. Mo. Apr. 24, 2018) (concluding that a plaintiff who was overcharged $3,182.62 had a "sufficiently strong" interest in the outcome of the case to adequately protect the interests of the class).

### B.      Rule 23(b)(3)

As stated above, in addition to satisfying each of the four requirements of Rule 23(a), Plaintiff must also meet at least one of the three requirements of Rule 23(b). Plaintiff alleges that he meets the requirements of subsection three, which requires Plaintiff to demonstrate: (1) that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff must establish predominance by a preponderance of the evidence. *Olean Wholesale Grocery Cooperative, Inc. v. Bumble Bee Foods LLC*, 993 F.3d 774, 784 (9th Cir. 2021) *rehearing en banc granted*, 993 F.3d 774 (9th Cir. 2021).

#### 1.      Rule 23(b)(3)'s predominance requirement

Rule 23(b)(3)'s predominance requirement consists of two parts. First, Plaintiff must show that common questions of law or fact predominate over individual questions. *Bally*, 335 F.R.D at 303. Second, Plaintiff must present a model of damages that (1) identifies damages that stem from State Farm's alleged wrongdoing and (2) is "susceptible of measurement across the entire class." *Id*. (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013)).

1

2          a.      **Common issues of law or fact**

3          The predominance inquiry "asks whether the common, aggregation-enabling, issues in the

4  case are more prevalent or important than the non-common, aggregation-defeating, individual

5  issues." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 WILLIAM B.

6  RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 4:49 (5th ed. 2012). A court's "commonality"

7  inquiry under Rule 23(b)(3) is "far more demanding" than that conducted to establish

8  commonality under Rule 23(a). *Amchem*, 521 U.S. at 623-24. "When 'one or more of the central

9  issues in the action are common to the class and can be said to predominate, the action may be

10 considered proper under Rule 23(b)(3) even though other important matters will have to be tried

11 separately, such as damages or some affirmative defenses peculiar to some individual class

12 members.'" *Id.* (quoting 7AA CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,

13 FEDERAL PRACTICE AND PROCEDURE § 1778 (3d ed. 2005)); *see also Hanlon*, 150 F.3d at 1022

14 ("Where common questions present a significant aspect of the case and they can be resolved for

15 all members of the class in a single adjudication, there is clear justification for handling the

16 dispute on a representative rather than an individual basis." (quoting 7AA WRIGHT, MILLER &

17 KANE, *supra* § 1788)).

18        State Farm argues that individualized issues will predominate in this case because the

19 Policy was sold to each putative class member through independent sales agents who "spoke to

20 potential policyholders in face-to-face, unscripted encounters guided by and tailored to each

21 individual's needs, goals, and motivations for seeking life insurance." Dkt. No. 83 at 10.

22 According to State Farm, because the Policy was sold through these "unscripted" sales pitches

23 "tailored" to each individual policyholder, it will be entitled to present individualized extrinsic

24 evidence at trial regarding each class member's knowledge, intent, and motivation when

25

26

27

purchasing their respective Policy. State Farm argues that these individualized inquiries will overwhelm the questions common to the class and, thus, Plaintiff cannot satisfy the predominance inquiry.

Two district courts have already addressed the question of predominance with respect to this Policy. In *Vogt*, 2018 WL 1955425 (W.D. Mo. Apr. 24, 2018) and *Bally*, 335 F.R.D. 288, two policyholders filed putative class actions challenging State Farm's interpretation and treatment of the COI rates in insurance policies identical to the one Plaintiff challenges here. When each plaintiff moved to certify the class, State Farm opposed the motion, arguing among other things that the cases necessitated individualized determinations, which rendered certification inappropriate under Rule 23(b)(3). The *Vogt* and *Bally* Courts each disagreed, determining instead that the putative class satisfied the predominance inquiry because "[t]he major portion of the evidence on [the plaintiffs'] claims … is capable of consideration on a class wide basis." *Vogt*, 2018 WL 1955425, at *6 (W.D. Mo. Apr. 24, 2018); *Bally* 335 F.R.D. at 304 (quoting *Vogt*).

State Farm acknowledges the *Vogt* and *Bally* holdings as it must, but argues that the decisions hold no precedential value in this case because the *Vogt* and *Bally* courts applied Missouri and California law, respectively, and Washington law, which governs the Policy in this case, dictates a different outcome. Specifically, State Farm argues that Plaintiff's breach of contract and conversion claims are not appropriate for class certification because, under Washington's "context rule," it will be entitled to present individualized extrinsic evidence regarding each policyholder's intent when purchasing the Policy. Likewise, State Farm argues that Plaintiff's WCPA claim is not appropriate for class certification because individualized WCPA causation issues will predominate.

### i.      The breach of contract and conversion claims

State Farm is correct that Washington state applies the "context rule" when interpreting insurance contracts. *Hearst Commc'ns, Inc. v. Seattle Times Co.*, 115 P.3d 262, 266 (Wash. 2005) (en banc). The context rule recognizes that the "intent of the contracting parties generally cannot be interpreted without examining the context surrounding an instrument's execution." *Id.* Thus, if relevant for determining mutual intent, extrinsic evidence may include (1) the subject matter and objective of the contract, (2) all the circumstances surrounding the making of the contract, (3) the subsequent acts and conduct of the parties, and (4) the reasonableness of respective interpretations urged by the parties. *Id.* (citing *Berg v. Hudesman*, 801 P.2d 222, 228 (Wash. 1990)). However, Washington law does not "authoriz[e] unrestricted use of extrinsic evidence in contract analysis." *Hollis v. Garwall*, *Inc.*, 974 P.2d 836, 842 (Wash 1999). *See also U.S. Life Credit Life Ins. Co. v. Williams*, 919 P.2d 594, 598 (Wash. 1996) (noting that the Washington Supreme Court's intention in adopting the "context rule" was not "to allow such evidence to be employed to emasculate the written expression of" the meaning of the contract's terms). Further, while a finding of ambiguity is not required for the introduction of extrinsic evidence, courts applying Washington law find extrinsic evidence to be of limited value in the absence of actual contract negotiations. *See Queen City Farms, Inc. v. Cent. Nat. Ins. Co. of Omaha*, 882 P.2d 703, 721 (Wash. 1994) ("[W]hile evidence of the parties' mutual intent may be helpful in some contexts, we have recognized that sometimes language in standard policies does not involve mutual negotiations between the insurers and the insured."); *Spratt v. Crusader Ins. Co.*, 37 P.3d 1269, 1272-73 (Wash. Ct. App. 2002) (holding that "[b]ecause *the key is what the parties negotiated* for, parol evidence is admissible only if it 'goes no further than to show the situation of the parties and the

circumstances under which the instrument was executed'" and noting that *"[u]sually the terms of insurance policies are not negotiated*" (emphasis added) (quoting *Berg*, 801 P.2d at 230)).

The Court rejects State Farm's contention that it will be entitled to present individualized evidence pertaining to each of the putative class member's Policy purchase. The Court finds that State Farm's contention that its agents somehow bound it to thousands of individual contracts, each with individual variations, runs counter to the reality of the circumstances under which these Policies were issued, namely that the Policy is a standard form, non-negotiated contract. State Farm presents no evidence to suggest that the uniform terms of the Policy have ever been modified for a policyholder. Indeed, the Policy expressly prohibits State Farm agents from modifying the terms of the contract: "Only an officer has the right to change th[e] [P]olicy," and "[n]o agent has the authority to change the [P]olicy or to waive any of its terms." Dkt. No. 1, Ex. 1 at 11. Thus, "[n]either State Farm's nor the Policy-holder's obligations can be obviated by informal consent or waiver." *Vogt v. State Farm*, 2018 WL 1955425, *2 (W.D. Mo. April 24, 2018). It also runs counter to the axiom of contract law that a standardized contract "is interpreted wherever reasonable as treating alike all those similarly situated, without regard to their knowledge or understanding of the standard terms of the writing." *Bally*, 335 F.R.D. at 302 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 211(2) (AM. L. INST. 1981)). *See also In re Conseco Life Ins. Co. Life Trend Ins. Mktg. & Sales Practice Litig.*, 920 F. Supp. 2d 1050, 1065 (N.D. Cal. 2013) (rejecting defendants' invitation to individually analyze each sales representation, reasoning that standard forms are "drafted as such precisely in order to avoid the problem [the insurer] now invites—that thousands of policyholders have thousands of different understandings of a standard form" and concluding that "[a]llowing [the insurer's] assertion that its agents had multiple and inconsistent understandings of a *standard form*, to defeat class

certification here would up-end Rule 23's commonality requirement"), *vacated sub nom.*, *In re Conseco Life Ins. Co. Lifetrend Ins. Sales & Mktg. Litig.*, No. 3:10-MD-02124-SI, 2013 WL 10349975 (N.D. Cal. Nov. 8, 2013).[4]

Moreover, if—when addressing the merits of this case—this Court determines that the COI provision in the Policy is ambiguous, Washington law requires this Court to adopt the interpretation that is favorable to the insured. *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1246 (Wash. 1997) (stating that any ambiguity in an insurance policy "is strictly construed against the insurer"); *Queen City Farms*, 882 P.2d at 721 ("[L]eft with ambiguity in a nonnegotiated standard form insurance provision[, the] [u]nresolved ambiguity in insurance contract language is resolved against the insurer."); *McLaughlin v. Travelers Com. Ins. Co.*, 476 P.3d 1032, 1037 (Wash. 2020) ("[W]hen determining the meaning of undefined terms in an insurance policy, [the court] look[s] to the expectation of the average insurance purchaser."). Thus, the *subjective* intent of an individual policyholder would not be relevant to this consideration.

Nor is this Court persuaded by State Farm's reliance on *Avritt v. Reliastar Life Insurance Co.*, 615 F.3d 1023 (8th Cir. 2010). In *Avritt*, the Eighth Circuit affirmed the district court's denial of class certification, determining that that the defendant's right to introduce extrinsic evidence of how a contract was "explained in various sales discussions and whether each purchaser's understanding of the contract was consistent with the theory the [plaintiffs] . . . advance" meant that the defendant's "liability to the entire class for breach of contract [could not] be established with common evidence." *Id.* at 1030. In reaching this decision, the *Avritt* court applied only a limited discussion of Washington law, and there is no indication that the contract in

---

[4] The Court further notes that State Farm's argument would effectively eliminate insurance class actions in the State of Washington because, in order to avoid class certification, all an insurer would have to do is simply allege individualized sales pitches.

question specifically prohibited sales agents from modifying the terms of the contract, as the instant Policy does. This Court concludes that a more reasoned interpretation of Washington law is that extrinsic evidence of each individual sales pitch is not relevant to determine the parties' intent when entering a standard form, non-negotiated insurance policy.

Lastly, the Court has reviewed the extrinsic evidence that State Farm alleges demonstrates that its agents informed the potential policyholders that the COI rates included factors other than age, sex, and rate class, and finds it less than persuasive.[5] For instance, Agent Scott Hubert testified that he "told potential policyholders that their rate class, along with their sex and age, would determine the [COI] rate and the amount of their monthly cost of insurance deduction." Dkt. No. 94 at ¶ 21. He does not claim that he ever told a potential policyholder that the COI rate included profits and expenses. In fact, he states that he does not recall a potential policyholder "asking [him] questions about whether profits and expenses were a part of the [COI] rate." *Id.* at ¶ 25. Agent Craig Johnson testified that if a potential policyholder "asked [him] questions about the cost of insurance deduction …[he] described it as the cost of doing business." Dkt. No. 88 at ¶ 25. However, he also testified that he explained to the potential purchaser that the COI rate was "impact[ed] by their rate class, and, along with their age and sex." *Id.* at ¶ 19; *see* also ¶¶ 20-21 (explaining that the COI is determined by the policyholder's gender, age, and rate class). Agent Steven Williams testified that as a State Farm agent, "[i]t was [his] impression that the potential policyholders [he] spoke to knew that they would be assigned a [COI] rate developed for persons of their age, sex, and applicable rate class (e.g. the rate State Farm has developed for a 35-year-old female of standard tobacco health) ," in other words, confirming Plaintiff's interpretation of

---

[5] This Court may consider the merits of Plaintiff's claims to the extent that "they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen*, 568 U.S. at 466.

the Policy. Dkt. No. 96 at ¶ 17. Lastly, while Agent Nancy Pipinich states that "policyholders understand that there are administrative costs inherent in the cost of the *policy*," she does not state that the policyholders understood that those administrative costs were included in the *COI rate* calculation. Dkt. No. 93 at ¶ 16 (emphasis added); *see also* ¶ 10 (describing the COI rate as "based on the insured's age at the time, sex, and rate class" and noting that State Farm deducts "an expense charge" and the COI every month to "cover the cost of the policy"). Therefore, the Court concludes that even if it were to consider the foregoing extrinsic evidence while determining the parties' intent, it would only bolster Plaintiff's breach of contract and conversion claims.

### ii.   **The WCPA claim**

The elements of a WPCA claim are: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) causes injury to the plaintiff's business or property, and (5) involves a casual link between the practice and injury. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 719 P.2d 531, 532 (Wash. 1986). State Farm argues that Plaintiff's WCPA claim is not appropriate for class certification under Rule 23(b)(3) because "causation will require individualized assessment." Dkt. No. 83 at 17. According to State Farm, each putative class member will "need to establish reliance and materiality with respect to the claimed omission—namely, the failure to disclose that profits and expenses were considered in developing [the COI] rates." *Id*. Therefore, State Farm alleges, it will be entitled to "present individualized evidence from policyholders and agents on whether each of 11,000 class members would have bought their [Policy] regardless of any omission because they already knew or assumed that the [COI] rates contained profits and expenses, were told that by

their agent or just didn't care about it." *Id*. Thus, State Farm argues, individualized issues will predominate common facts, rendering the WPCA claim unsuitable for class certification.

Plaintiff counters that causation may be presumed in this case because the WCPA claim does not depend on any affirmative misrepresentations, but rather, on a uniform omission in the Policy. Plaintiff is correct. "While the Washington Supreme Court has never affirmed a presumption of reliance in consumer fraud cases involving material omissions, it has acknowledged that reliance is 'virtually impossible to prove' in cases involving nondisclosure of material facts." *Blough v. Shea Homes, Inc*., No. 2:12-cv-01493 RSM, 2014 WL 3694231, at *13 (W.D. Wash. July 23, 2014) (quoting *Morris v. Int'l Yogurt Co*., 729 P.2d 33, 41 (Wash. 1986)). As such, other courts in this district have recognized a rebuttable presumption of reliance for CPA fraud claims. *See, e.g.*, *Grays Harbor Adventist Christian Sch. v. Carrier Corp*., 242 F.R.D. 568, 573 (W.D. Wash. 2007) (certifying a WCPA claim because "[a] presumption of reliance is appropriate . . . where Plaintiffs have primarily alleged omissions" (emphasis omitted)). This presumption of reliance "shifts the focus of the causation inquiry from what information each class member received to what the defendant 'allegedly concealed in light of what consumers reasonably expect,' a question capable of generating a common answer across the class without substantial individualized inquires." *Blough*, 2014 WL 3694231, at *13 (quoting *Grays Harbor*, 242 F.R.D at 573). The Court concludes that a presumption of reliance is appropriate in this case given Plaintiff's omission-based theory of liability, thereby eliminating the need for individualized evidence.

### iii.    Statute of Limitations

Next, State Farm argues that Plaintiff was placed on notice in 2011 and 2013 that something was amiss with how State Farm was determining the COI rates because "the evidence

shows that [Plaintiff] made inquiries" regarding the COI rates during those years. Dkt. No. 83 at 27. Therefore, State Farm argues, Plaintiff's claims are time-barred. In making this argument, State Farm refers to two emails written by Plaintiff. The first is a 2011 email that Plaintiff sent to himself that simply states: "evaluatelifeinsurance.org." Dkt. No. 108, Ex. 1 at 208. Plaintiff testified that he sent the email to himself after he heard about "evaluatelifeinsurance.org" on the radio. *Id*. at 212. He stated that he believed the company could help him determine whether his life insurance policy was "worth keeping" but that he did not "think [he] used the service." *Id*. at 211-212. The second email is an email Plaintiff sent to a State Farm agent in which he stated: "Is there any way to identify the actual cost for insurance? Maybe it's too complicated to do that since Universal Life is so complex." Dkt. No. 109; Ex. 4 at 2; Dkt. No. 108, Ex. 1 at 201-202. However, when asked about this email in his deposition, Plaintiff clarifies that he wrote the email at a time when he was considering buying a term life insurance policy and was attempting "to get an apples-to-apples comparison" of his current policy with the term policy. Dkt. No. 108. Ex. 1 at 206. There is no indication that Plaintiff suspected that State Farm was improperly calculating the COI rate at the time or that Plaintiff ever received an answer to his question. Simply put, neither email suggests that Plaintiff was placed on notice that State Farm was considering unlisted factors in calculating his COI rate.

As to the other putative class members, State Farm has failed to produce any evidence to suggest that individual statute of limitation issues would predominate here.[6] *See Vogt*, 2018 WL 1955425, at *6 (W.D. Mo. Apr. 24, 2018) ("[T]here is nothing [in this case] to indicate that

---

[6]Relying on the declarations from several of its agents, State Farm argues that potential policyholders were informed that the COI rate was based on factors other than age, sex, and rate class. However, as discussed *supra*, this Court has reviewed the agents' testimony and is not persuaded that it establishes that the putative class members were informed that the COI rate would be determined based on factors other than those enumerated in the Policy.

individual statute-of-limitations issues would predominate so as to make class certification impractical or inappropriate."); *Bally*, 335 F.R.D. at 304 ("State Farm does not adduce any evidence to show that policyholder[s] would have been on notice that State Farm was considering unlisted variables in calculation [of] the COI." (internal quotation marks omitted)).

### iv.    Plaintiff's damages model

To satisfy the second requirement of the predominance inquiry under Rule 23(b)(3), Plaintiff must present a damages model that identifies damages that stem from State Farm's alleged wrongdoing and that is "susceptible of measurement across the entire class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013). Plaintiff offers the declaration and report of Scott J. Witt, an actuary who also testified on behalf of the plaintiffs in the *Vogt* and *Bally* cases. Witt provides a model that purports to reliably calculate the allegedly improper COI charges for each Policy using State Farm's own documentation and data. Dkt. No. 72 at ¶ 10(c). According to Witt, State Farm determined a "pricing mortality rate" using "age, sex, rate class, and policy year" (*i.e.*, the Policy-enumerated factors), but added "loads for other non-mortality related factors in excess of and in addition to those mortality expectations." *Id*. at ¶ 10(a). Witt's model uses the mortality rates to isolate the excess COI loads and calculate the damages for each policyholder. Using "the policy-level data produced by State Farm," Witt calculated the total damages to the putative class to be in excess of $16 million. *Id*. at 10(d).

State Farm launches a half-hearted attack on Witt's damages model, alleging that the model does not "match Plaintiff's liability theories" because it uses rates that vary depending on the length that a given policyholder held the Policy and does not differentiate on the basis of a policyholder's tobacco use. Dkt. No. 83 at 29. According to State Farm, this creates an intra-class conflict by "disadvantaging non-smokers and long-term policyholders relative to smokers and

short-term policyholders, contrary to what policyholders are told through the sales and underwriting process." *Id.* at 31. State Farm also alleges that the model awards policyholders who were unharmed because they received death benefits and were unaffected by the COI rate.

State Farm raised each of the foregoing arguments in the *Vogt* and *Bally* cases and each was soundly rejected by those courts. This Court finds the reasoning of those judges' persuasive. With respect to State Farm's argument that the model impermissibly uses "unpooled" rates, which differ based on the age of a given policy, the *Vogt* and *Bally* courts concluded that this criticism goes to the merits of the case and, as such, does bar class certification. *See Vogt*, 2018 WL 1955425, at *5 (W.D. Mo. Apr. 24, 2018) ("The issue [of policy duration] is intertwined with the merits and is not appropriately resolved upon a motion for class certification. It does not bar class certification."); *Bally*, 335 F.R.D. at 299 ("State Farm's argument amounts to a factual dispute over the correct input that Witt should have used in his model, rather than a criticism of the model itself, and thus does not go against Witt's reliability as an expert."). This Court finds that this challenge to Witt's model does not warrant denial of class certification.[7]

With respect to the model's use of blended tobacco usage rates (*i.e.*, it does not differentiate for tobacco usage), the *Vogt* and *Bally* Courts concluded that doing so comports with the terms of the Policy and the plaintiffs' damages theory. *See Bally*, 335 F.R.D. at 299 (holding that "the blended [tobacco] rates that Witt used reflect the terms of [the Policy], and his use of those rates comports with plaintiff's damages theory of COI charges beyond the terms of the Policy"); *Vogt v. State Farm Life Ins. Co.*, No. 2:16-cv-04170-NKL, 2018 WL 4937330, at *5 (W.D. Mo. Oct. 11, 2018) (holding that State Farm's "mortality table undisputedly did not

---

[7] Indeed, the jury in *Vogt* ultimately rejected State Farm's argument on this point and Plaintiff has indicated that he will invoke the *Vogt* verdict to collaterally estop State Farm from relitigating the issue, an issue the Court does not need to resolve at this point.

distinguish between tobacco users and those who did not use tobacco, and tobacco use was not one of the enumerated factors in the Policy on which COI rates were supposed to be based"), *aff'd*, 963 F.3d 753, 769 (8th Cir. 2020) (holding that Witt did not "differentiate between tobacco and non-tobacco users, [but] there was no need for the damages model to take this mortality factor into account as this was not a mortality factor listed in the policy"). This Court also concludes that the model's use of blended tobacco rates does not disqualify it from Plaintiff's damages theory.

Nor is this Court persuaded that the model is unreliable because it does not account for who received the death benefit. State Farm alleges that this scenario results in no damages for those class members because those who received the death benefit received the face value of their Policy, an amount that was consistent regardless of the Account Value at the time of death. The *Vogt* and *Bally* courts correctly rejected this argument, concluding that such policyholders may still "have suffered damage to their account values by paying out loaded COI charges in excess of what the Policy authorized" during the term of the Policy. *Bally*, 335 F.R.D. at 300; *Vogt*, 2018 WL 1955425, at *4 (W.D. Mo. Apr. 24, 2018) (holding that "even deceased policyholders may have been injured by potentially unauthorized deductions from the Account Value").

Lastly, State Farm moves to exclude Witt's damages testimony under Federal Rule of Evidence 702, arguing that it is neither relevant nor reliable. State Farm argues that Witt's testimony is not relevant because it does not "fit" Plaintiff's liability theory. Dkt. No. 83 at 32. As discussed *supra*, the Court rejects this argument. State Farm next argues that Witt's testimony is unreliable because he does not apply his own independent expertise and because his methodology "cannot be tested against any objective principle." *Id*. Both arguments are non-starters. First, Witt clearly relied on his experience as an actuary and insurance advisor in rendering his opinion. Second, the model's methodology, assumptions, and inputs are readily verifiable as Witt provides

a step-by-step formula for calculating the Account Values for each of the putative class members. *See Bally*, 335 F.R.D. at 297-98 (rejecting State Farm's motion to strike Witt's expert report as inadmissible under *Daubert*).

### b.    Superiority

To satisfy Rule 23(b)(3)'s superiority requirement, Plaintiff must demonstrate that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). State Farm does not challenge this requirement and this Court finds that a class action is the superior method for adjudicating the claims of the proposed class members here where the potential individual recovery is relatively small. *See Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997) ("The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.").

### C.    Whether Plaintiff Satisfied Rule 23(b)(2)

Plaintiff also argues that his claim for declaratory judgment and injunctive relief (Count V) satisfies Rule 23(b)(2). Rule 23(b)(2) permits class certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As this Court has already found, *supra*, the terms of the Policy are the same for all prospective class members, which means that an injunction or declaration relating to the contract terms will be uniform. Thus, Plaintiff's claim for declaratory judgment and injunctive relief satisfies Rule 23(b)(2) and class certification is warranted. *See Bally*, 335 F.R.D.

at 305 (certifying plaintiff's declaratory judgment claim under Rule 23(b)(2)); *Vogt*, 2018 WL 1955425, at *7 (W.D. Mo. Apr. 24, 2018) (same).

### D. *Olean Wholesale*

After the completion of briefing on this motion, State Farm sought leave to file supplemental briefing on the Ninth Circuit's recently released decision in *Olean Wholesale Grocery Cooperative v. Bumble Bee Foods LCC*, which this Court granted. However, having reviewed the *Olean* decision and the parties' supplemental briefs, the Court concludes that *Olean* is of little relevance to the instant case. The central issue in *Olean* was whether the plaintiff's use of statistical representative evidence to establish classwide damages masked the existence of class members who suffered no injury. 993 F.3d 774, 792 (9th Cir. 2021) (noting that as much as "28% of the class" may have been uninjured). The *Olean* Court concluded that the district court erred when it "glossed over the number of uninjured class members" to conclude that class certification was appropriate. *Id*. at 793.

There is no similar concern in the instant case. Plaintiff's expert has calculated damages for each putative class member using State Farm's transactional data specific to each class member's policy, and, moreover, identifies positive damages suffered by each class member. Moreover, the *Olean* decision is not a final decision as an *en banc* hearing has been grated in the case.

## V.   CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS Plaintiff's motion for class certification.

Pursuant to Rule 23(b)(3), the Court certifies a class of plaintiffs consisting of "[a]ll persons who own or owned a universal life insurance policy issued by State Farm on Form 94030

in the State of Washington whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction" for each of Plaintiff's claims. Excluded from the class are: State Farm; any entity in which State Farm has a controlling interest; any of the officers, directors, or employees of State Farm; the legal representatives, heirs, successors, and assigns of State Farm; anyone employed with Plaintiff's counsel's firms; any Judge to whom this case is assigned, and his or her immediate family; and policies that insured males with an age of zero and terminated in the first policy year.

The Court certifies the same class of plaintiffs pursuant to Rule 23(b)(2) for Plaintiff's claim for declaratory and injunctive relief (Count V) only.

Dated this 20th day of September 2021.

Barbara     Jacobs     Rothstein
U.S. District Court Judge