The Honorable Barbara J. Rothstein

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT TACOMA

WILLIAM T. WHITMAN, et al.,

        Plaintiffs,

    v.

STATE FARM INSURANCE COMPANY,

        Defendant.

Civil Action No. 3:19-cv-06025-BJR

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

## I.      INTRODUCTION

Plaintiffs, a class of individuals who purchased life insurance from Defendant State Farm, brought suit against Defendant alleging claims for breach of contract, conversion, violations of the Washington Consumer Protection Act ("WCPA"), and for declaratory judgment. Before the Court are cross-motions for summary judgment as to all of Plaintiffs' claims. Having reviewed the motions, the oppositions thereto, the record of the case, and the relevant legal authorities, the Court will grant Defendant's motion for summary judgment and deny Plaintiffs' motion. The reasoning for the Court's decision follows.

1

## II.    BACKGROUND

The parties' dispute arises out of a life insurance policy (the "Policy") sold by Defendant since at least 2001.  Policy, Dkt. 149-2 at 3.  The dispute focuses on how the monthly cost of Plaintiffs' insurance was calculated, more particularly on the deductions Defendant made from Plaintiffs' individual accounts.  On September 20, 2021, the Court certified a class of all persons in the State of Washington who own or owned a universal life insurance policy issued by State Farm on Form 94030 whose policy was in-force on or after January 1, 2002 and who was subject to at least one monthly deduction.  Dkt. 125.

### A. The Policy

The Policy is described on its cover page as "[f]lexible premium adjustable life insurance" and is somewhat novel in design.  Policy, Dkt. 149-2 at 1.  Unlike a traditional insurance policy, the premium amount is not fixed by the insurer and need not be paid every month.  Policy, Dkt. 149-2 at 9.  The Policy states that policyholders can "make premium payments in any amount at any time."[1]  Policy, Dkt. 149-2 at 9.  What the Policy calls a "premium" is more akin to a deposit made to a savings account.[2]  The account into which policyholders make deposits accrues interest and funds can be withdrawn from it.  Policy, Dkt. 149-2 at 3, 9.  Instead of a traditional premium,

---

[1] There were certain limitations to this flexibility.    Premium payments had to be at least $25, could not exceed the total "Planned Premiums" for a policy year, and could not result in the account being "disqualified as a life insurance contract under . . . the Internal Revenue Code."  Policy, Dkt. 149-2 at 5.  "Planned Premium" is defined as "[t]he premium amount that you [the policyholder] have chosen."  Policy, Dkt. 149-2 at 5.  It is unclear whether policyholders suffered any penalty if they did not pay their premiums as planned, even if their account held enough funds to cover the monthly deduction.

[2] However, the policyholder is charged a 5% "premium expense charge" for each deposit made to the account. Policy, Dkt. 149-2 at 3.

the insurance is paid for by a set of fixed monthly deductions from the account.  Policy, Dkt. 149-2 at 8-9.  The Policy would not necessarily lapse if a policyholder did not make a monthly deposit, but it would lapse if the account lacked funds sufficient to cover the monthly deductions.  *See* Policy, Dkt. 149-2 at 9.

The Policy authorizes Defendant to make three different types of monthly deductions: "(1) the "cost of insurance" charge; (2) a "charge for any riders" (not at issue here); and (3) a $5.00 "monthly expense charge.""[3]  Policy, Dkt. 149-2 at 9; Plaintiffs' SJ Motion, Dkt. 147 at 2.  This dispute concerns the meaning of (1) and (3): the "cost of insurance" and "monthly expense charge" deductions.

**B.  The Monthly Cost of Insurance Provision**

The monthly "cost of insurance" ("COI") deduction is a fixed monthly amount set by Defendant at the outset of each new Policy year.  Policy, Dkt. 149-2 at 10.  The COI deduction is described in the Policy as follows:

> **Monthly Cost of Insurance Rates.**  <u>These rates for each policy year are based on the Insured's age on the policy anniversary, sex, and applicable rate class.</u> A rate class will be determined for the Initial Basic Amount and for each increase. The rates shown on page 4 are the maximum monthly cost of insurance rates for the Initial Basic Amount. Maximum monthly cost of insurance rates will be provided for each increase in the Basic Amount. We can charge rates lower than those shown. Such rates can be adjusted for projected changes in mortality but cannot exceed the maximum monthly cost of insurance rates. Such adjustments cannot be made more than once a calendar year.

Policy, Dkt. 149-2 at 10 (emphasis added).  The primary subject of the parties' dispute is the

---

[3] These deductions are separate from the 5% premium expense charge, which is a fee assessed on deposits, not a deduction from the account.  *See supra* note 2.

3

phrase: "based on the Insured's age on the policy anniversary, sex, and applicable rate class." "Rate Class" is defined elsewhere in the Policy as "the underwriting class of the person insured." Policy, Dkt. 149-2 at 5.  In the case of the named Plaintiff, the rate class was "Standard Rate Class-Male Non-Tobacco."  Policy, Dkt. 149-2 at 10.

Plaintiffs claim that Defendant did not base its monthly deduction only on age, sex, and rate class, but instead "inflated [its] rates with undisclosed loads after considering and including unlisted profit and expense factors."  Plaintiffs' SJ Motion, Dkt. 147 at 3-4.  Plaintiffs assert that the COI deduction should have been calculated based only on "mortality factors" specific to the policyholder, such as age, sex, and tobacco use, and that Defendant's profit and expense considerations should not have been part of the calculation.

Defendant does not dispute that profit and expense (i.e., non-mortality) factors influenced the COI but only insofar as these factors were weighed in determining the rate classes that were used as part of the COI calculation.  Defendant's SJ Motion, Dkt. 154 at 4.  According to Defendant, "[t]he rate *selection* process is separate (both topically and temporally) from State Farm's earlier actuarial process for *developing* those rates for the various cohorts of Insureds years before the Policy was ever sold."  Defendant's SJ Motion, Dkt. 154 at 4 (emphasis in original).  In other words, Defendant used non-mortality factors to determine its base rates (rate development), and the mortality factors of a particular policyholder acted as multipliers in determining that individual's monthly COI (rate selection).

## C.    The $5.00 Monthly Expense Charge Provision

The second provision at issue is the fixed $5.00 "monthly expense charge" deduction.  The provision is listed under the heading "Monthly Deductions" where the COI is also listed.  Policy,

4

Dkt. 149-2 at 3.   Unlike the COI, the monthly expense charge is not defined or discussed elsewhere in the Policy.   The provision states only that "[t]he monthly expense charge is $5.00."  Policy, Dkt. 149-2 at 3.

Plaintiffs contend that the plain language of the expense charge provision implies that "State Farm is not authorized to deduct more than $5.00 for expenses in each Monthly Deduction, and that State Farm cannot therefore deduct $5.00 each month for the Expense Charge and also deduct undisclosed expenses through the COI Charge."  Plaintiffs' SJ Motion, Dkt. 147 at 14. Plaintiffs claim that Defendant violated the expense charge provision by effectively charging Plaintiff for other expenses through the COI formulation.  Plaintiffs' SJ Motion, Dkt. 147 at 15.

Defendant urges a less literal interpretation of the provision, arguing that a reasonable policyholder would understand that the $5.00 expense charge could not be the only expense deduction, because there were clearly other "expenses" and "costs" listed.  Defendant's SJ Motion, Dkt. 154 at 21.  Defendant points to a section of the Policy that breaks down the amounts that were to be deducted from Plaintiffs' account.  Defendant's SJ Motion, Dkt. 154 at 20 (citing Policy, Dkt. 149-2 at 9).  That section "expressly provides that 'each' monthly deduction will 'include' separate charges for both the 'Monthly Expense Charge' ($5) *and* the 'Monthly Cost of Insurance.'"  Defendant's SJ Motion, Dkt. 154 at 20.  The Policy also describes a separate 5% premium "expense" charge.[4]  Policy, Dkt. 149-2 at 3.  Defendant contends that "[Plaintiff's] reading of 'expense' for purposes of the alleged cap [on expense-related deductions] would wipe

---

[4] Plaintiff does not claim that this charge violates the $5.00 monthly expense provision.

5

out the cost of insurance clause," because "cost" and "expense" essentially mean the same thing. Defendant's SJ Motion, Dkt. 154 at 20.

### III.   APPLICABLE LAW

#### A. Summary Judgment

"The standard for summary judgment is familiar: 'Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.'" *Zetwick v. County of Yolo*, 850 F.3d 436, 440 (9th Cir. 2017) (quoting *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016)). A court's function on summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). If there is not, summary judgment is warranted.  Contract interpretation is a question of law and is appropriate for summary judgment. *United States v. King Features Entm't, Inc.*, 843 F.2d 394, 398 (9th Cir. 1988); *see also Syrovy v. Alpine Res., Inc.*, 68 Wash. App. 35, 39 (1992) ("Whether a contract is ambiguous and the legal effect of a contract are, in general, questions of law.").

#### B. Contract Interpretation

Contract disputes are governed by state law, and the parties agree that Washington law applies.  *See* Defendant's SJ Motion, Dkt. 154 at 10; Plaintiffs' SJ Motion, Dkt. 147 at 5. Washington courts construe insurance policies like any other contract.  *Kut Suen Lui v. Essex Ins. Co.*, 375 P.3d 596, 599 (Wash. 2016).  Courts give the policy "a fair, reasonable and sensible construction as would be given to the contract by the average person purchasing insurance." *Providence Health & Servs. V. Certain Underwriters at Lloyd's London*, 440 F. Supp. 3d 1223,

6

1228 (W.D. Wash. 2020) (citations omitted).  The policy must be viewed "as a whole; a phrase cannot be interpreted in isolation." *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244, 1246 (Wash. 1997). A disputed provision "will not be given a forced or constrained construction that would lead to an absurd conclusion." *Mid-Century Ins. Co. v. Zanco*, 456 F. Supp. 3d 1213, 1224 (E. D. Wash. 2020).

If the Court finds that a policy provision is ambiguous, Washington law requires that the ambiguity be resolved in favor of the insured.  *Queen City Farms, Inc. v. Central Nat'l Ins. Co. of Omaha*, 126 Wash. 2d 50, 83 (1994).  A provision is ambiguous if it is "fairly susceptible to two different, reasonable interpretations." *Wm. Dickson Co. v. Pierce Cnty*, 128 Wash. App. 488, 493-94 (2005).  "Resolving the ambiguity in favor of the insured" means that the Court adopts the reasonable interpretation offered by the insured.  *Queen City Farms*, 126 Wash. 2d at 83 ("Under this rule, [the insured's proposed] standard applies, as the insured has offered this reasonable construction of the policy language.").  Courts may sometimes use extrinsic evidence to understand the intent of the parties and resolve ambiguities.  But where there are no "actual negotiations" over a policy or provision, there is by law no relevant extrinsic evidence of intent.  *Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 123 Wash. 2d 678, 684 (1994); *Spratt v. Crusader Ins. Co.*, 109 Wash. App. 944, 949 (2002).

## IV.    DISCUSSION

The parties' summary judgment motions together cover six different claims and issues: (1) the alleged breach of the COI provision; (2) the alleged breach of the $5.00 monthly expense provision; (3) Plaintiffs' derivative conversion claim; (4) Plaintiffs' derivative claim under the WCPA; (5) Plaintiffs' declaratory judgment claim; and (6) Defendant's statute of limitations

defense.  The Court will first consider (1) and (2), because its decision on those issues obviates the need to reach the others.

### A. The COI Provision

Plaintiffs' first claim alleges that Defendant breached the COI provision of the Policy by including "undisclosed profit and expense" (i.e., non-mortality) factors in the monthly COI deduction.  Plaintiffs' SJ Motion, Dkt. 147 at 6.  As noted above, Plaintiffs argue that the Policy permitted Defendant to consider "only the disclosed mortality factors to determine the monthly COI rates used to calculate the COI Charges."  Plaintiffs' SJ Motion, Dkt. 147 at 6.  According to Plaintiffs, "the disclosed mortality factors" are "age, sex, and applicable rate class."  Plaintiffs' SJ Motion, Dkt. 147 at 13.  Defendant argues that its profit and expense factors are essentially built into the "applicable rate class" factor and that the Policy permits this.

A handful of courts in other jurisdictions have considered claims identical to Plaintiffs'.  In *Vogt*, the Western District of Missouri and the Eighth Circuit sided with Plaintiffs.  Neither court considered the theory now advanced by Defendant.[5]  *Vogt v. State Farm Lift Ins.*, No. 2:16–cv–04170–NKL, 2018 WL 1747336 (W.D. Mo. Apr. 10, 2018), *aff'd*, 963 F.3d 753 (8th Cir. 2020).  The District of Minnesota followed *Vogt* as controlling authority and denied Defendant's motion for summary judgment in *Jaunich*.  *Jaunich v. State Farm Life Ins. Co.*, 2021 WL 5054461 (D.

---

[5] *Vogt* examined whether the Policy's description of the COI as "based on" age, sex, and rate class meant that the COI was strictly limited to the considerations expressly listed in the provision, which the court labeled "mortality factors."  *Vogt*, 963 F.3d at 764.  The plaintiffs' argument was that profit and expense factors are not expressly listed and so could not be considered as part of the COI calculation.

The Court need not decide whether "based on" is a limiting term, because Defendant's current interpretation of the COI effectively renders the question moot.  Under Defendant's theory, even if the Policy requires the COI to be limited to age, sex, and applicable rate class, the rate classes themselves are based on non-mortality factors.

Minn. Nov. 1, 2021).  In *Bally*, the Northern District of California did not expressly disagree with the reasoning in *Vogt* but found for Defendant on a different theory of the COI provision.  *Bally v. State Farm Life Ins. Co.*, 536 F. Supp. 3d 495 (2021).  A magistrate judge in the Western District of Texas considered both *Vogt* and *Bally* and recommended denial of Defendant's motion for summary judgment, but the district judge has not yet decided whether to adopt the recommendation.  *Page v. State Farm Life Ins. Co.*, SA-20-CV-00617-FB, 2022 WL 718789 (W.D. Tex. Mar. 10, 2022).  In the case before this Court, Defendant has aligned its argument with the *Bally* opinion, whereas Plaintiffs urge the Court to disagree with *Bally* and adopt the reasoning of *Vogt* to the extent it applies.

The parties' dispute amounts to whether an ordinary consumer would reasonably interpret the phrase "[t]hese rates for each policy year are based on the Insured's age . . . , sex, and applicable rate class" to mean that the resulting COI calculation would not include State Farm's profit and expense considerations.  As an initial matter, the Court disagrees with Plaintiffs' characterization of age, sex, and applicable rate class as "mortality factors."  Sex and age undeniably fall into that category, but "applicable rate class" does not.  Many reasonable people consider seeing a doctor if they fear well-known risks related to age or sex, but no reasonable person seeks medical advice because they are worried about their applicable rate class at State Farm.  In other words, there is nothing about the term itself that suggests it is related to commonly understood mortality risks.

Although an ordinary consumer might not know what applicable rate class means, the term is read in the context of the Policy as a whole, and the Policy defines "rate class" as "the *underwriting* class of the person insured."  Policy, Dkt. 149-2 at 4.  Part of this definition is merely a circular way of expressing the "applicable" and "class" in "applicable rate class," but the word

"underwriting" has relevant meaning.  The definition does not make clear the precise procedure for developing rate classes, but it is clear that "[t]he provision makes no promises about how the 'applicable rate class' will be developed," and certainly not the very specific promise Plaintiffs imagine.  *Bally*, 536 F.Supp.3d at 508.

Plaintiffs hardly address the Policy's definition of "rate class," despite Defendant's relying heavily on the underwriting (or "rate development") process as distinct from the "rate selection" process.  *See, e.g.*, Defendant's SJ Motion, Dkt. 154 at 6-7.  In their motion for summary judgment, Plaintiffs say in a footnote: "The *Bally* court relied on the Policy's definition of 'rate class' as referencing underwriting, appearing to mistakenly conclude that underwriting provides State Farm some additional, unspecified authority."  Plaintiffs' SJ Motion, Dkt. 147 at 9.  In their reply brief, Plaintiffs contend that "State Farm fails to refute that an insured would understand underwriting . . . as anything other than a mortality assessment."  Plaintiffs' Reply, Dkt. 179 at 5.

Plaintiffs' insinuation that the plain meaning of "underwriting" suggests a limited focus on mortality factors does not hold water.  If anything, the comprehensive nature of the term "underwriting" suggests the very opposite of a limitation and could encompass nearly all of an insurance company's business.  One industry group defines underwriting as "the process of determining whether to accept a risk and, if so, what amount of insurance the company will write on the acceptable risk, and at what rate."[6]  This definition could be simplified to read "developing rates based on risks."  The "risks" are those undertaken by the insurer in writing the policy—not

---

[6] *Underwriting*, INTERNATIONAL RISK MANAGEMENT INSTITUTE, https://www.irmi.com/term/insurance-definitions/underwriting (last visited Aug. 30, 2022).

an *individual's* particular mortality risks.  Dictionary definitions are not controlling as to plain meaning, but it is telling that this Court could not find a definition of underwriting that implied an exclusive focus on mortality factors.[7]

The fact that an ordinary consumer might not know exactly what underwriting means does not create an ambiguity that must be resolved in Plaintiffs' favor.  For purposes of this case, the COI provision is unambiguous if an ordinary consumer would understand that Defendant might take non-mortality factors into account when developing their rates.  Furthermore, for the COI provision to be ambiguous (and for the Court to "resolve the ambiguity in favor of the insured"), Plaintiffs must offer a reasonable interpretation to which the provision is susceptible.  The Court finds that they have not.  As noted above, "applicable rate class" is not a mortality factor itself, and there is nothing in its definition or in other provisions of the Policy that suggests rate classes are based solely on mortality factors.

The Court also agrees with the *Bally* court that Plaintiffs' interpretation, when followed to its logical end, does not make much sense.  *Bally* reasoned that, "as a matter of common sense, it is unreasonable for anyone to believe that 'mortality factors' are the only input into the rate

---

[7] *See, e.g.*, *Underwrite*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/underwrite (last visited Sept. 3, 2022) ("[T]o set one's name to (an insurance policy) for the purpose of thereby becoming answerable for a designated loss or damage on consideration of receiving a premium percent : insure on life or property."); *Underwriting: The risk-assessment process used in everything from IPOs to life insurance*, BUSINESS INSIDER, https://www.businessinsider.com/personal-finance/what-is-underwriting (last visited Sept. 3, 2022) ("Underwriting is the process of taking on risk in a financial transaction, typically a loan, insurance, or investments."); *Underwriting*, INVESTOPEDIA, https://www.investopedia.com/terms/u/underwriting.asp (last visited Sept. 3, 2022) ("Underwriting is the process through which an individual or institution takes on financial risk for a fee. This risk most typically involves loans, insurance, or investments. The term underwriter originated from the practice of having each risk-taker write their name under the total amount of risk they were willing to accept for a specified premium.").

development process, because age, sex, and all other 'mortality factors' have to be numerically translated for State Farm to arrive at a cost of insurance rate expressed in dollars." *Bally*, 536 F. Supp. 3d at 508.  Plaintiffs' contention that "there can be no dispute that 'it is possible to calculate the COI rate based exclusively on the specified [mortality] factors'" implies that there is some objective, impartial, and widely recognized numerical value assigned to the risks associated with age and sex, and that Defendant added "undisclosed loads" to an otherwise purely mathematical equation.  Plaintiffs' Reply, Dkt. 179 at 7 (quoting *Vogt*, 2018 WL 1747336, at *5).  In reality, there is no direct translation of factors like "male" and "female" into numbers.  The COI calculation may be a mathematical equation, but the *values* in the equation are set by the insurance company according to its own methodologies and risk tolerance.  These proprietary processes— which fall under the umbrella of underwriting—are of course "undisclosed," as they are the core of insurance companies' business and represent a competitive advantage.  Indeed, Plaintiffs stipulated to a protective order in this case that covers confidential trade secrets, including "methodologies and analysis associated with development of cost of insurance rates."  Dkt. 48 at 2.

The plain meaning of the COI provision's title, the "cost of insurance," also supports the reasonableness of Defendant's reading.  It is unclear what could reasonably constitute the "cost" of insurance if not the insurance company's profit and expenses.  If this were a contract for the construction of a home and there was a provision for the "cost of materials," it would be readily understood as the price paid by the homebuilder to acquire the materials—and no more.  In the life insurance context, "cost" does not have that meaning.  The main cost associated with insurance is the insurer's ability to cover the potential losses associated with the risks it undertakes, an ability

12

that is closely tied to the insurer's profit and expenses.

In summary, the Court finds that Plaintiffs' interpretation of the COI provision—that the COI should be calculated based only on mortality factors like age and sex—does not account for the term "applicable rate class" or the broader context of the Policy and is not reasonable. Furthermore, Defendant's interpretation—that base rates are developed through an underwriting process, and then multiplied by an individual's age, sex, and other mortality risks to select their particular rate class—is in line with what an ordinary consumer would reasonably understand. Accordingly, the Court adopts the latter interpretation and grants summary judgment for Defendant on Plaintiffs' COI breach claim.

**B. The $5.00 Monthly Expense Charge Provision**

Plaintiffs' next claim alleges even that if Defendant permissibly built expenses into the COI deduction, it nevertheless breached the monthly expense charge provision. As noted above, Plaintiffs argue that the expense charge provision effectively capped the amount Defendant could deduct for its expenses at $5.00. Defendant argues that "the phrase 'monthly expense' is just the name of that 'charge'" and does not literally represent its expenses. Defendant's Reply, Dkt. 181 at 10.

The context of the Policy supports Defendant's reading of the provision. In a section entitled "Monthly Deduction," the Policy states that "[e]ach deduction includes: (1) the cost of insurance; (2) the monthly charges for any riders; and (3) the monthly expense charge." Plaintiffs' SJ Motion, Dkt. 147-1 at 9. The Court has found that an ordinary consumer would understand the "cost of insurance" to potentially include profit and expense considerations. If a consumer understood that expenses were part of the cost of insurance, then they necessarily would have

13

understood that the separately listed expense charge was not the only fee that included expenses. Adopting any other interpretation would produce "a forced or constrained construction that . . . lead[s] to an absurd conclusion." Accordingly, the Court grants summary judgment for Defendant on the monthly expense charge claim.

### C. Remaining Claims

Plaintiffs do not dispute that their remaining claims—for conversion, violations of the WCPA, and a declaratory judgment—are derivative of their breach of contract claims. To succeed on conversion, Plaintiffs admit that they would need to establish that Defendant deducted money from Plaintiffs' account "contrary to [the] instructions" specified in the contract. Plaintiffs' Opp'n, Dkt. 165 at 20. To succeed under the WCPA, Plaintiffs would need to establish that "[Defendant] deducted COI Charges and Monthly Expense Charges that did not comport with the Policy's terms each month," thereby constituting an unfair or deceptive trade practice. Plaintiffs' Opp'n, Dkt. 165 at 22. Plaintiffs cannot establish either of these elements or claims without the Court finding that Defendant breached the COI or monthly expense charge provisions, and the Court has found that Defendant breached neither. Plaintiffs' declaratory judgment claim "asks the Court to resolve the parties' competing views on the proper interpretation of the Policy," and the Court has done so. Accordingly, the Court grants summary judgment for Defendant on all of Plaintiffs' remaining claims.

## V.   CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Defendant's motion for summary judgment (Defendant's SJ Motion, Dkt. 154) and DENIES Plaintiffs' motion for summary judgment (Plaintiffs' SJ Motion, Dkt. 147). The parties' evidentiary motions and motions in limine

14

(Dkts. 151, 155, 156, 195, 196) are STRICKEN as moot.

DATED this 6th day of September, 2022.

_____
BARBARA J. ROTHSTEIN
UNITED STATES DISTRICT JUDGE